**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-1457- JLK-SKC

LAWRENCE RUBIN MONTOYA,

Plaintiff,

v.

CITY AND COUNTY OF DENVER;
DETECTIVE MARTIN E. VIGIL;
DETECTIVE MICHAEL MARTINEZ;
LIEUTENANT JONATHAN W. PRIEST; and
DETECTIVE R.D. SCHNEIDER, JR., in their individually and official capacities,

Defendants.

---

**DEFENDANTS' PARTIALLY UNOPPOSED MOTION
TO AMEND THE SCHEDULING ORDER**

---

Defendants, through their respective counsel, pursuant to Fed.R.Civ.P. 16(b)(4) and D.C.COLO.LCivR 6.1, hereby submit their Partially Unopposed Motion to Amend the Scheduling Order to extend the discovery deadline and dispositive motions deadlines forty-five (45) days.

**AND IN SUPPORT THEREOF**, Defendants state as follows:

### I.  STATEMENT OF CONFERRAL

In compliance with D.C.COLO.LCivR 7.1(a), the parties have conferred regarding the relief requested herein. Plaintiff does not oppose the extension of the discovery deadline to conduct the depositions of expert witnesses and does not oppose the extension of deadlines to depose witnesses not previously disclosed. Plaintiff does, however, oppose Defendants' motion to the

extent that it seeks to extend the discovery deadline to conduct depositions related to fact witnesses which were included in previous disclosures.

## II. REQUEST FOR RELIEF

1. Presently, the discovery cutoff in this case is scheduled for April 24, 2023, and the dispositive motions deadline is set for May 24, 2023. [Dkt. #189]. Since the Court's Order setting those deadlines, the parties have conducted significant discovery, including the depositions of the Defendants and Plaintiff's deposition on March 23, 2023. The parties have also disclosed expert witnesses, supplemental responses to discovery, supplemental expert disclosures, and are prepared to complete discovery within a short time.

2. At Plaintiff's deposition, the roles of several witnesses, some previously disclosed, became substantially clearer. Plaintiff has since disclosed individuals not previously disclosed that arose during Plaintiff's deposition. As a result, Defendants now desire to depose several individuals previously deemed unnecessary to depose.

Unfortunately, Plaintiff's counsel unilaterally decided no depositions could be conducted during the final 18 days of discovery due to their schedules.

3. Additionally, the parties recently exchanged expert disclosures on March 20, 2023. The parties have attempted to schedule the depositions of experts in this case. However, the schedules of the experts have proven to be untenable with the current discovery deadline. For example, one expert witness is unavailable until May for a deposition.

4. Accordingly, Defendants respectfully request (and Plaintiff does not oppose) that the Court extend the discovery deadlines for expert witnesses and for witnesses not disclosed before Plaintiff's deposition. Defendants respectfully request an additional forty-five (45) days to

conduct these depositions, extending the discovery deadlines to June 8, 2023, and correspondingly extending the dispositive motion deadline to July 8, 2023.

5. Defendants also request (and Plaintiff opposes) an extension of the general discovery deadline for the limited purpose of conducting the limited depositions of additional fact witnesses. Certain of these witnesses were identified in disclosures by Plaintiff[1], but their role was not clear from the statements in disclosures until Plaintiff provided context and testified to their involvement in the incidents underlying this case.

6. In many cases, Plaintiff's testimony at his deposition proved to be not only unexpected, but shocking. Plaintiff made several statements that directly contradicted prior statements that he made previously, in ways that implicated the necessity to depose additional witnesses. Specifically, Plaintiff's deposition testimony revealed the following information, none of which Defendants could have reasonably anticipated:

*Plaintiff's Guilty Plea*

During Plaintiff's deposition, Defendants learned Plaintiff's 2014 guilty plea (to accessory after the fact, reduced from felony murder), which in turn led directly to his release from prison (and thus constitutes the basis for his prior argument for "favorable termination" in this case), was a sham. Notably, when answering questions asked by his own counsel, Plaintiff expressly testified his prior sworn testimony in his colloquy was false. **Exhibit A**, at [300:4 – 301:15] (testifying facts

---

[1] Other new witnesses have been identified. For example, Plaintiff also testified that Vanessa Romero – the sister of his cousin Luke Anaya, who Plaintiff has blamed for the murder in question – was his "best friend" during those years. Because Vanessa was not previously disclosed, Defendants should not be prohibited from seeking her testimony merely due to the unavailability of Plaintiff's counsel for the final 18 days of discovery.

his lawyer stated on record in colloquy were false) and [302:19 – 303:2] (testifying he never pled guilty because he believed in his guilt, but did so to get out of prison).

In other words, Plaintiff now adamantly contends he is factually innocent of the underlying crime of accessory after the fact, despite being convicted of that crime. *Compare* **Exhibit B**, Reporter's Transcript for Rule 35(c) Hearing dated June 6, 2014 at [11:10 – 15:6] *with* **Exhibit A**, Pl. Deposition, at [300:20 – 301:15] and [235:7 – 236:8]. Having previously misled the criminal court into believing he was actually admitting guilt for accessory – and therein obtaining not only his release from jail, but the ability to file this lawsuit – Plaintiff now seeks to prevent Defendants from following up on this crucial development. This would be a manifest injustice.

Because Plaintiff now intends to expressly disavow his guilty plea – which remains in effect – Defendants should be afforded additional time to investigate this unanticipated development[2] and to depose any relevant witnesses.[3]

*Plaintiff's Alibi Witnesses*

At his criminal trial, Plaintiff presented an alibi defense in the form of testimony of his then-girlfriend Heather Marquez, and her two family members Robert and Arieta Marquez. All three members of the Marquez family testified Plaintiff spent the night at their house on December

---

[2] While Plaintiff's discovery responses indicated he might testify that he no longer *recalls* certain of the facts he testified to in pleading guilty, Defendants could not have expected him to testify that not only the facts underlying the plea, but his admission of guilt itself, was not an actual or honest admission.

[3] In pleading guilty, Plaintiff testified regarding facts known to him through the conversation with three other individuals (two surviving) while they rode in the decedent's car on the day of her death. While Plaintiff previously disclosed these individuals – Nick Martinez and Luke Anaya – Defendants respectfully submit Plaintiff's rejection of his own guilty plea should allow them the opportunity to receive more time to depose, or in the case of Mr. Anaya make additional efforts to locate, such material witnesses.

4

31, 1999, and thus could not have been present for the murder of Emily Johnson. Plaintiff's defense attorney closed on this at trial. *See* **Exhibit C**, Montoya Criminal Trial, Def. Closing Argument (arguing "[t]hey failed to prove that Lorenzo was not exactly where Heather Marquez, Robert Marquez, and Arieta Marquez said he was. ***At their house, on that evening, all night long, during the time that Ms. Johnson was killed.")*** (emphasis added).

Plaintiff's discovery responses are – on this particular point – at least somewhat consistent with his theory at the criminal trial. Indeed, Plaintiff provided a narrative of the events of December 31, 1999 and January 1, 2000:

> [O]n December 31, 1999, Mr. Montoya went to Jennifer Valdez's house and from there he went to Robert Marquez's house. Then at some time between 9:00 a.m. and 12:00 p.m. on January 1, 2000 he walked home to Aunt Tomasita's house. At some point after arriving home he went outside his Aunt's house with his brother Freddy Torres and Luke Anaya. Mr. Montoya does not recall the time, including whether it was before 4:00 p.m., but at some point on that day Nicholas Martinez, who he had never met before, pulled up in a Lexus and Mr. Montoya, Freddy Torres and Luke Anaya got in the car. The car was later crashed by Freddy Torres.

**Exhibit E**, Pl. Interrogatory Responses, #3.

But at his deposition, Plaintiff expressly contradicted not only this verified response, but the very foundation of his trial defense, in several ways:

*(regarding his whereabouts and activities at the time of the murder)*

> Q: Do you have any idea what you were doing New Year's Eve 1999?
> A: Maybe sitting for Jen – Jennifer, possibly.
> Q: So you just told me you don't remember anything about 19 – December 31, 1999, right?
> A: Correct.
> Q: And now you said you were possibly babysitting for Jennifer that same night, right?
> A: Correct.
> Q: If you don't remember it, why do you say that?
> A: I don't know.

5

*Id.* at [109:11 – 21].

And

Q: Does that – based on what you just told me, does that mean that you woke up on January 1, 2000 at Aunt Tomacita's house?
A: At Tomacita's.
Q: Is that correct?
A: Correct.
Q: That's where you woke up January 1, 2000, correct?
A: Correct.

*Id.* at [112:3-11].

And

Q: To the best of your recollection, you recall possibly being at *Jennifer Valdez's house,* right?
A: Correct.
Q: That's the *only* possible place you remember about New Year – being New Year's Eve, right?
A: Correct.

*Id.* at [213:15 – 17] (emphasis added).

*(regarding the Marquez' family testimony)*

Q: Do you have any idea why [the Marquezes] came and they said those things at trial?
A: They were testifying in – in my defense.
Q: Because they wanted to help you out, right?
A: Correct.
Q: Because you – Heather was your girlfriend and she wanted to do you a favor?
A: Correct.

*Id.* at [215:5 – 12].

*(regarding the existence of a girlfriend)*

Q; Did you have a girlfriend back in 1999?
A: No.
Q: At just – at no point in 1999 you had a girlfriend?
A: Friends, but not, like, girlfriend.

**Ex. A** at [95:25 – 96:4].

6

Especially in light of Plaintiff's discovery responses, Defendants could not have expected Plaintiff to contradict his sworn alibi witnesses by stating he spent the night and woke up somewhere entirely different (Aunt Tomasita's), let alone state he did not have a girlfriend at the time. And if Plaintiff's sworn alibi was falsified (in addition to the testimony underlying his 2014 guilty plea), this is crucial evidence that may be used to impeach him at trial and Defendants should be permitted additional time to explore these avenues. Among other witnesses, the testimony of Plaintiff's Aunt Tomasita – who Plaintiff disclosed but now for the very first time claims he spent the night in question at the home of–[4] is now essential.

*The Broncos Jacket*

A key piece of evidence in the January 1, 2000 homicide was a Denver Broncos jacket left at the home of the victim. At least one witness told police she saw Plaintiff on the night in question, wearing a jacket that matched the one found at the scene. At the criminal trial, Plaintiff's attorney cross-examined that witness vigorously. Plaintiff's attorney also elicited testimony from Plaintiff's Aunt Tomasita on direct (with whom Plaintiff lived at the time) unequivocally stating Plaintiff *did not own* an orange Denver Broncos jacket. *See* **Exhibit**. **D**, Criminal Trial NT, 10/30/00 at [126:9-14].

Plaintiff's criminal attorney then closed on that evidence at trial, arguing to the jury that neither Plaintiff nor his family owned a Broncos jacket, and thus had no connection to the jacket found at the scene. *See* **Ex. C**, Def. Closing Argument at [187:17 – 188:4] (arguing to the jury,

---

[4] In Plaintiff's discovery responses he affirms "some time between 9:00 a.m. and 12:00 p.m. on January 1, 2000, he *walked to* Aunt Tomasita's house," while in his deposition he testifies he *woke up at* Aunt Tomasita's house. *Compare* **Ex. E**, Pl. Interrog. Resp. #3 *with* **Ex. A**, at [112:3 – 11]. This is a critical distinction when considering Plaintiff's whereabouts when Emily Johnson was murdered.

"[n]one of them [Mr. Montoya's witnesses] identified him as ever wearing a Broncos jacket or the family owning a Broncos jacket." Defendants have never known – nor could they– of any reason to question this testimony.

But at Plaintiff's deposition, he provided such a reason for the first time:

> Q: Back in 1999, did you own a Denver Broncos jacket?
> A: I did, correct.

*Id.* at [126:16-18].

Curiously, while Plaintiff readily recalls owning such a jacket, he cannot remember a single detail about it. *See id.* at [126:16 – 127:21]. And no such jacket was ever found by police when executing a search warrant on Plaintiff's residence.

Once again, Defendants were surprised to learn this information. And this is critical, as Plaintiff's ownership of such a jacket could have provided the simplest and easiest basis to exonerate him for the crime at hand. Moreover, it contradicts another seminal piece of his defense – including the testimony of his Aunt Tomasita and his attorney's closing argument – at trial. This constitutes an additional basis to depose – at the very least – Plaintiff's Aunt Tomasita, if not any other witness who could speak to Plaintiff's attire during that period of time. Again, Plaintiff should not be permitted to change a multitude of material facts of the case, and then shield such changes from discovery even before closing of the discovery period.

7.   In addition, one witness (Gail Muranyi) was only identified by name in disclosures. That witness' relation to this case only became clearer at Plaintiff's deposition on March 23, 2023, when Plaintiff unexpectedly testified he has lived with Ms. Muranyi for the better part of the last decade, and that the two of them exchanged *more than 50 letters* throughout his incarceration. *See id.* at [219:16 – 221:11]. As such, Plaintiff's testimony regarding Ms. Muranyi provided

8

significantly more information regarding the witness' involvement in the case, as well as introducing the existence of 50 letters exchanged between the two that are likely to contain discoverable information. No such letters were ever produced in this lawsuit.

8. Had disclosure statements made during litigation in this case contained sufficient information necessary to evaluate what "subjects of information" some witnesses had access to, Defendants would have previously conducted the depositions of these additional fact witnesses. Fed.R.Civ.P. 26(a)(1)(A)(i).

9. Defendants relied upon statements made in disclosure pleadings and previous sworn testimony from Plaintiff's criminal trial in deciding not to depose these additional witnesses. Now that both the disclosure statements and the previous testimony has been amended – if not entirely disavowed by Plaintiff, Defendants have experienced extenuating circumstances that belies their original decision to not depose certain additional witnesses.

10. Indeed, Defendants began the process of inquiring whether these depositions could be scheduled before Plaintiff's deposition and were given a range of dates. Given the difficulties of scheduling with a significant number of counsel for Defendants, Defendants initiated that process in an attempt to provisionally find dates, in the event that the additional depositions were deemed necessary.

11. In response to Defendants' requests, Plaintiff's counsel indicated that they were entirely unavailable for the last 18 days of discovery, representing roughly half of the remaining time in discovery. Put differently, Plaintiff unilaterally closed discovery 18 days before the Court's deadline.

12. Following the unexpected testimony in Plaintiff's deposition, Defendants initiated the process of locating and attempting to subpoena the additional witnesses that were now deemed necessary to depose.

13. Twelve days after Plaintiff's deposition, Defendants attempted to confirm several date ranges for these depositions. Defendants advised Plaintiff that, given issues with locating the additional witnesses they wished to depose, the date ranges excluding the last 18 days of discovery were not likely workable, and suggested finding dates that could work after Plaintiff's calendar opened up in the second half of April to early May.

14. Defendants have been advised that Plaintiff opposes the extension of the time to depose any fact witnesses already disclosed. However, given the change in both: (1) disclosure statements; and (2) Plaintiff's testimony at his deposition, the calculus of whether it was prudent to depose these individuals has materially changed.

15. Opposing counsel's unavailability, particularly given the quick turn-around following Plaintiff's deposition, and the difficulties of deposing unrepresented parties, has rendered the need for a brief extension to depose additional fact witnesses exigent.

16. Given that the parties do not oppose conducting *some* depositions during a brief extension, permitting additional fact witness depositions would encourage "block" scheduling of depositions, ensuring that all counsels' schedules remain open while dates are finalized between the parties and the deponents. Accordingly, a brief extension of the discovery deadline permitting additional fact depositions would resolve discovery in this case, in its entirety. A brief extension is therefore in the interest of the Court to resolve all remaining discovery issues between the parties.

17. No parties will be prejudiced by this short extension of the deadlines, nor will the Court be prejudiced as there is no trial date set. No other deadlines will be affected by this brief extension of deadlines.

18. The Court has previously granted three extensions of the discovery deadline. *See* [Dkt. #177, 181, 189]. Defendants do not anticipate that a further extension will be needed, given the extensive discovery completed between January and April of 2023. Further, for the reasons enumerated in ¶ 15, Defendants believe that a final forty-five (45) day extension of the discovery and dispositive motions deadline will complete discovery in this case.

19. A copy of this motion has been served contemporaneously on Defendants' clients.

20. Pursuant to the foregoing representations, this motion comports with the requirements of D.C.COLO.LCivR 6.1(b) and 6.1(c).

**WHEREFORE**, for the reasons stated herein and for good cause shown, Defendants respectfully request that the Court amend the Scheduling Order to extend the discovery deadline and dispositive motions deadlines forty-five (45) days to June 8, 2023 and July 8, 2023, respectively.

Respectfully submitted this ____ day of _____, 2023,

*s/ Eric M. Ziporin*
Eric M. Ziporin
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
T: 303-320-0509
eziporin@sgrllc.com

*s/ James T. Kadolph*
James T. Kadolph
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
T: 303-320-0509
jkadolph@sgrllc.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on this 24th day of April, 2023, I electronically filed a true and exact copy of the above and foregoing **DEFENDANTS' PARTIALLY UNOPPOSED MOTION TO AMEND SCHEDULING ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jane Fisher-Byrialsen
David N. Fisher
**Fisher & Byrialsen, PLLC**
Email: jane@fblaw.org
Email: david@fblaw.org
*Counsel for Plaintiff Lawrence Rubin Montoya*

David James Goldfarb
Josh Adam Marks
**Berg Hill Greenleaf & Ruscitti LLP**
Email: djg@bhgrlaw.com
Email: jam@bhgrlaw.com
*Counsel for Defendant R.D. Schneider, Jr. Individually and Officially*

Andrew D. Ringel
Christina Shavon Gunn
Shannon Hurley
**Hall & Evans, LLC-Denver**
Email: ringela@hallevans.com
Email: gunnc@hallevans.com
Email: hurleys@hallevans.com
*Counsel for Defendant Martin E. Vigil Individually and Officially*

Benjamin Longnecker
Jonathan K. Cooper
Jodanna L. Haskins
**Denver City & County Attorney's Office**
Email benjamin.longnecker@denvergov.org
Email jonathan.cooper@denvergov.org
Email jodanna.haskins@denvergov.org
*Counsel for Defendant City and County of Denver*

Peter H. Doherty
**Lasater & Martin, P.C.**
Email: Peter@LasaterandMartin.com
*Counsel for Defendant Jonathan Priest Individually*

      *s/ Carol J. Kelly*
      Legal Secretary

13