IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01457- JLK-SKC

LAWRENCE RUBIN MONTOYA

Plaintiff,

v.

CITY AND COUNTY OF DENVER;
DETECTIVE MARTIN E. VIGIL (Shield No. 86-12);
DETECTIVE MICHAEL MARTINEZ (Shield No. 82-29);
LIEUTENANT JONATHAN W. PRIEST (Shield No. 86-12);
DETECTIVE R.D. SCHNEIDER, JR. (Shield No. 85-24),
in their individually and official capacities.

Defendants.

---

### DEFENDANT JONATHAN PRIEST'S MOTION FOR SUMMARY JUDGMENT
---

**JONATHAN W. PRIEST**, by his attorney, **PETER H. DOHERTY**, of the law firm of

**LASATER & MARTIN, P.C.**, pursuant to Fed. R. Civ. P. 56, respectfully submits this Motion

for Summary Judgment,[1] and state as follows:

## I.      INTRODUCTION

The two remaining claims of Plaintiff's Second Amended Complaint [Doc. 124] against

the individual defendants include the Plaintiff's Fourth Amendment *Franks v. Delaware* Claim

(Sixth Claim for Relief) and a 42 U.S.C. § 1983 Civil Rights Conspiracy Claim (Seventh Claim

---

[1] Conferral: Through an exchange of emails on June 29-30, 2023, undersigned counsel discussed with Plaintiff's counsel the motions for summary judgment on behalf of all defendants and the scheduling of both the motions and responses. Based upon the exchange, Plaintiff did not concede the motions for summary judgment, and it is understood that Plaintiff opposes the requested relief.

for Relief) based on the warrant [2]. *See*, Court's Order of March 4, 2021 [Doc. 138] regarding Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.[3]

Plaintiff claims he was arrested on January 11, 2000, on an improper warrant related to the murder of Emily Johnson early on the morning of January 1, 2000. At the February 25, 2000, probable cause hearing the sufficiency of the evidence was tested by the state criminal court who determined probable cause existed. Several hearings occurred prior to the trial in October 2000, further serving as intervening events, including a suppression hearing related to the interrogation of Plaintiff on January 10, 2020. Following a jury trial, Plaintiff was convicted on November 3, 2000, at the age of fifteen.

Plaintiff now pursues his Fourth Amendment and conspiracy claims despite these claims being time barred. The two-year statute of limitation applicable to both claims began to run when Plaintiff turned eighteen years old, due to his minority, and expired when he was twenty on February 10, 2005. As discussed in more detail below, Plaintiff was aware, as early as 2005, but not later than 2007, that he had been wrongly implicated in Ms. Johnson's murder. Nonetheless, and despite actively participating in several criminal and civil proceedings, all of which were

---

[2] Plaintiff's Second Amended Complaint describes the Sixth Claim for Relief as a Fourteenth Amendment Substantive Due Process claim. This Court's Order on Defendants' Motions to Dismiss [Doc. 138, pp. 26-29] holds the proper constitutional font and analysis is under the Fourth Amendment.

[3] The Court Order of March 4, 2021 provides, "I review this case, not only after another judge has issued rulings and weighed in on its merits, but after the Tenth Circuit has significantly limited Mr. Montoya's prospects. With that backdrop, I find three of Mr. Montoya's eight claims survive the motions to dismiss: his claim asserting Defendant Officers presented a false affidavit in support of the warrant for his arrest as prohibited by *Franks v. Delaware*, 438 U.S. 154 (1978), his corresponding conspiracy claim, and his municipal liability claim based on the City's inadequate interrogation-related training." [Doc. 138 p. 2]

directly or tangentially based on the premise Plaintiff had been coerced into confessing to a murder he played no role in, Plaintiff delayed until June 14, 2016, before he pursued the present action. Not only are Plaintiff's claims time barred, but he cannot demonstrate the statute of limitations was tolled for any reason. Therefore, summary judgment on Plaintiff's two remaining claims is appropriate.

Defendant Priest further claims qualified immunity on the *Frank v. Delaware* claims and that he is otherwise entitled to summary judgment on the conspiracy claim.

## II.    STATEMENT OF UNDISPUTED FACTS

1.      During the early hours of January 1, 2000, Ms. Johnson, a 29-year-old schoolteacher, was violently assaulted at her home, resulting in her death shortly thereafter, and her vehicle was stolen following the assault. [Doc. 96-1, Second Amended Complaint, ¶¶ 18-20].

2.      The Denver Police Department ("DPD") began investigating Nicholas Martinez. [Doc. 96, ¶¶ 22-24].

3.      Through an interview with Nicholas Martinez, DPD police learned Plaintiff's cousin, Luke Anaya, was picked up in Ms. Johnson's stolen vehicle the night or early morning of the murder. *Id.*

4.      On January 10, 2000, Plaintiff was brought to DPD Headquarters to be interrogated, where he was questioned by Defendants Vigil, Martinez, and, at the end of the interview, by Defendant Priest. [Doc. 96, ¶¶ 30-31].

5.      While Plaintiff's mother was initially present for questioning, she left at some point and Defendants Vigil, Martinez, and Priest continued the interrogation. [Doc. 96, ¶¶ 43, 47-48].

6.      Following the interrogation, Detective Schneider prepared and signed an affidavit for Plaintiff's arrest.   [Doc. 96, ¶ 95].  *See also*, Affidavit and Application for Arrest Warrant, Doc. 1-7.

7.      Judge Robert Patterson approved the arrest warrant and Plaintiff was arrested on January 11, 2000.  [Doc. 96, ¶110].

8.      Plaintiff was charged with felony murder, aggravated robbery, first degree burglary, and aggravated motor vehicle theft.  [Doc. 96, ¶¶ 113].

9.      An advisement hearing was held on January 27, 2000, where Plaintiff was represented by legal counsel and the matter was set for a preliminary hearing.  *See*, January 27, 2000, Hearing Transcript, p. 84, line 12 – p. 90, line 2, attached as **Exhibit A.**

10.      A preliminary hearing was held on February 25, 2000, to test the sufficiency of the evidence.  Judge Lawrence Manzanares found probable cause supported Plaintiff's arrest. [Doc. 96, ¶¶ 117].

11.      At the preliminary hearing the court received testimony from DPD Officer Steve Schott and received twenty-six exhibits.  *See*, February 25, 2000, Hearing Transcript, attached as **Exhibit B.**

12.      On March 27, 2000, Plaintiff's arraignment hearing was completed.  *See*, March 27, 2000, Hearing Transcript, attached as **Exhibit C.**

13.      A motions hearing was completed on May 15, 2000.  See, May 15, 2000, Hearing Transcript, attached as **Exhibit D.**

14.     Subsequently, a hearing was held on June 9, 2000, and all statements made by Plaintiff after his mother left the interrogation were suppressed. See, June 9, 2000, Suppression Hearing Transcript, p. 115, lines 7 -12, attached as **Exhibit E**.[4] and Order, attached as **Exhibit F**.

15.     A motions hearing was completed on July 17, 2000.  See, July 17, 2000, Hearing Transcript, attached as **Exhibit G**.

16.     Plaintiff's trial began on October 24, 2000 [Doc. 96, ¶ 121].  Plaintiff was convicted of all counts related to the murder and was sentenced to life without parole on November 3, 2000. [Doc. 96, ¶126].

17.     On January 12, 2007, when Plaintiff was approximately 22 years old, he filed a *pro se* Petition for Post-Conviction Relief Pursuant to Crim. P. 35(c) raising the issue of "ineffective counsel" as a basis for overturning his conviction. A copy of the 2007 35(c) petition, and Order denying the Petition, is attached as **Exhibit H.**  *See also* Deposition of Lawrence Montoya, p. 239, line 18 – p. 241, line 18, **Exhibit I**.

18.     Plaintiff specifically asserted his conviction was obtained "in violation of the or laws of the United States or the constitution or laws of this state."  *See* **Exhibit** H, p 3.

19.     Plaintiff prepared this petition himself without the assistance of counsel.  (Montoya Dep., p. 37, line 2 – 38, line 21; p. 310 lines 10 – p. 311, line 7, **Exhibit**. **I**)

---

[4] Judge Manzanares suppressed the part of the interrogation following Plaintiff's mother's leaving the room due to a technical violation of Colorado law, requiring a parent's signed waiver.  Judge Manzanares did not conclude any *Miranda* violation occurred or the confession was coerced in violation of due process.   See, June 9, 2000, Suppression Hearing [Doc. 36-1, p. 115, line 7 – p, 122, line 6].

20.     On August 9, 2007, Plaintiff, pro se, filed an Application for Writ of Habeas Corpus in the United States District Court for the District of Colorado, Case: 1:07-cv-01677-ZLW.  *See*, Application for Writ of Habeas Corpus, attached as **Exhibit J**.

21.     In this Application, Plaintiff specifically alleged his "confession was coerced because detectives forced him to lie…." **Exhibit J**, p. 9 (Claim Three: Illegal Search and Seizure).

22.     Plaintiff testified he prepared the Application alone without the assistance of legal counsel or another individual, that he had portions of his file available from the criminal attorney, but Mr. Montoya selected the materials to complete the forms, answered the individual questions, and signed the declaration under penalty.  (Montoya Dep., p. 40, line 6 – p. 46, line 11; p. 311, line 1 – p. 312, line 13), **Exhibit I**.

23.     On June 24, 2013, Plaintiff, with the assistance of legal counsel, filed a Petition for Post-conviction Relief Pursuant to Crim. P. 35(c)(3).  *See*, Petition for Post-conviction Relief Pursuant to Crim. P. 35(c)(3) and attached filing docket, attached as **Exhibit K**.[5]

24.     On June 16, 2014, following the filing of the Rule 35(c) motion challenging his conviction on grounds of ineffective assistance of counsel, the prosecution and Plaintiff's criminal defense counsel reached an agreement whereby in exchange for the prosecution not contesting the Rule 35(c) ineffective assistance of counsel motion, Plaintiff agreed to plead guilty to being an accessory after the fact to the murder of Ms. Johnson (the "Plea Agreement"). *See* **Exhibit L** (Petition to Enter Plea Agreement), pg. 4 at ¶ 17, previously submitted to this Court as Doc. 37-1. *See also*, Reporter's Transcript of the Rule 36(c) Hearing, dated June 16, 2014, attached to

---

[5] The Petition for Post-conviction Relief Pursuant to Crim. P. 35(c)(3) was filed on June 24, 2013 in the criminal case, and refiled as an exhibit in 2016 in the malpractice case. The criminal docket (attached to Exhibit K) confirms date of filing **Exhibit K** on June 24, 2013.

Plaintiff's first Complaint. [Doc. 1-2, at 3:7-18].

25.     Pursuant to the Plea Agreement, Plaintiff's prior convictions were vacated, and he was sentenced to 10 years on the accessory charge and sentenced to time served. **Exhibit L**, pg. 4 at ¶ 17. ("The District Attorney and I have agreed and stipulated to the following concession(s)...: *People will confess ineffective assistance of counsel only if [Defendant] pleads guilty to accessory C4 Felony* with waiver of *Blakely*.  10 year DOC sentence and 3 years parole, credit for time serviced (*nun pro tunc* to 2000) 11/3/00. [No] addition[al] time in either DOC or on parole.") (emphasis added).

26.     Plaintiff agreed to this plea agreement. *See* **Exhibit L,** Petition to Enter Plea Agreement; *see also* Reporter's Transcript of Hearing [Doc. 1-2, at 6:7 – 7:9].

27.     In so doing, Plaintiff admitted, as of the date of the June 16, 2014, hearing, he (a) spoke and understood English; (b) was thinking clearly; (c) was not under the influence of any alcohol or drugs; (d) and did not have any physical or emotional condition which interfered with his decision to enter into the plea agreement.  *See* Reporter's Transcript of Hearing, 6:21-8:1 [Doc. 1-2, at 6:7-7:9].

28.     The District Attorney, Plaintiff's criminal defense counsel, the Court, and Plaintiff each acknowledged the basis for this plea agreement during the Rule 35(c) hearing, with Plaintiff specifically admitting he "rendered assistance to Nicholas Martinez with intent to hinder, delay, or prevent the discovery, detention, apprehension, prosecution, conviction, or punishment of Nicholas Martinez for the commission of a crime, knowing that person had committed the crime of murder ...." Reporter's Transcript of Hearing., [Doc. 1-2, at 4:7-17, 5:21-24; 6:21-7:9; 8-9:25].

29.     In entering into the plea agreement, Plaintiff acknowledged he thoroughly reviewed

the agreement and understood the rights he was giving up as a result.  [Doc. 1-2, at 9:1-14:8].

30.    Specifically, Plaintiff acknowledged he understood he "admit[ed]" the facts of the offense detailed in paragraph 24, above, and by doing so, he was prohibited from "com[ing] back later to deny or dispute" those facts.  [Doc. 1-2, at 13:10-14].

31.    Plaintiff further agreed his entering into the plea agreement was his "own free and voluntary decision."  [Doc. 1-2, at 13:25-14:2].

32.    Consequently. Judge Bronfin concluded "there is an adequate factual basis for the plea" and that "the plea is made in a knowing, intelligent, and voluntary fashion."  [Doc. 1-2, at 14:22-15:2].

33.    On June 4, 2016, Plaintiff filed a malpractice lawsuit against his criminal counsel claiming ineffective assistance of counsel.  *Lawrence Montoya v. Kurt Metsger, et al*, 2016CV32034.  *See* Complaint, attached as **Exhibit M**.

34.    Plaintiff's date of birth is February 10, 1985 [Doc 96-1]; he was twenty years old on February 10, 2005.

35.    Plaintiff has passed three of four parts of the GED - reading, writing and science - though he continues to struggle with the math portion of the test.  (Montoya Dep., p. 21, lines 1-19, **Exhibit I**.)

36.    Plaintiff still has the felony conviction arising from the murder of Ms. Johnson. (Montoya Dep., p. 12, lines 2-22, **Exhibit I**)

37.    Plaintiff did not have guardian ad litem for the Rule 35(c) proceedings in 2014, nor has a guardian ad litem been appointed for him currently.  (Montoya Dep., p. 39, lines 2-5; p. 65, lines 4-19, **Exhibit I**)

8

38. The current action was filed on June 14, 2016.

39. Defendant Robert Schneider wrote the arrest warrant for Lorenzo Montoya and testified that District Attorney Lamar Sims and Defendant Priest provided a synopsis of the Montoya interview. (Schneider Dep., p. 41, lines 23-25; p. 73, lines 3-22, **Exhibit N**).

40. Defendant Schneider testified that he does not recall which of the two individuals provided what information, or watched the interview, and "I don't know which one specifically said that statement or which one specifically said the other." (Schneider Dep., p. 146, lines 11-21; p. 332, lines 1-19, **Exhibit N**).

41. Defendant Priest testified that Defendant Schneider is incorrect, that "It's not how I would have done it," that any information included in an affidavit would have been typed by Defendant Priest directly. (Priest Dep., p. 24 line 9 – p. 25, line 10, **Exhibit O**)

42. Defendant Priest was primarily involved in the criminal investigation as it related to the crime scene, including a bloody shoe pattern found at the crime scene as well as the concrete, sidewalk and in the alley near the crime scene. (Priest, Dep., p. 25, line 22 – p. 26, line 10; p. 48, line 11 – p. 50, line 12, **Exhibit O**).

43. Plaintiff Montoya wore shoes with a consistent class characteristic shoe pattern during the interrogation, described as shoes he was wearing by his cousin, Luke Anaya when he entered Montoya's interrogation and stated that those shoes had been worn by Plaintiff on New Years Eve, the night of the murder. (Priest, Dep., p. 48, line 12 – p. 63, line 22, **Exhibit O**).

44. The shoes that Plaintiff Montoya wore during the interview could not be excluded as being at the crime scene but a similar pair obtained from the Anaya/Montoya residence were identified "high probability" during the preliminary hearing. (Priest Dep., p. 58, line 14 – p. 60,

line 11; p. 106, lines 13-24, **Exhibit O**; Preliminary Hearing, February 25, 2000, p. 92, line 6 – p. 96, line 13;  Montoya Dep. P. 313, line 3 – p. 316, line 12, **Exhibit B**).

45.     Plaintiff Montoya testified he believes Luke Anaya was involved in the murder of Ms. Johnson and that his statements during the Montoya interrogation incriminated him as being at the scene.  (Montoya Dep. P. 313, line 3 – p. 316, line 12, **Exhibit I**).

## III.     ARGUMENT

### A.     PLAINTIFF'S REMAINING CLAIMS FOR RELIEF ARE BARRED BY THE STATUTE OF LIMITATIONS.

#### 1.     THE APPLICABLE LIMITATIONS PERIOD EXPIRED WELL BEFORE PLAINTIFF FILED SUIT.

Plaintiff's claims are governed by a two-year statute of limitations and are time-barred. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("We have made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued.").  Plaintiff's date of birth is February 10, 1985 [Doc 96-1], and he was twenty years old in 2005.  The current action was filed on June 14, 2016.  [Doc. 1].

Determining the accrual date for a 42 U.S.C. § 1983 claim is a question of federal law. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The claim accrues when the plaintiff knows, or should know, that his or her rights have been violated. *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006). And "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999) (*quoting Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).  *See, Eikenberry v. Seward Cty.*, 734 F. App'x 572, 576 (10th Cir. 2018), where the Court found the

alleged conduct (excessive force, house searches, strip search, and taking of nude photographs) accrued when the actions actually occurred.

The Tenth Circuit in *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) provided the following analysis:

> Plaintiff also contends in both cases that he was blamelessly ignorant of the existence or cause of his injuries and that the claims should not have accrued until he knew of his injuries. Section 1983 claims accrue, for the purpose of the statute of limitations, "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368, 67 L. Ed. 2d 347 (1981), (*quoting Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied* 444 U.S. 842, 100 S. Ct. 83, 62 L. Ed. 2d 54 (1979)). Claims alleging denial of a fair trial are presumed to have accrued at the time the trial concludes. *See, e.g., Martin v. Merola,* 532 F.2d 191, 195 n.7 (2d Cir. 1976). Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur. *See, e.g., Singleton,* 632 F.2d at 191; *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988). Plaintiff presents no reason why he did not know at the time of his trial that potential jurors were improperly excluded from the jury or venire based on their race. Plaintiff presents no reason why he did not know of his other alleged injuries at the time of the arrest, interrogations, searches and seizures, and other activities, which allegedly caused them. Accordingly, the claims accrued in January 1988 and May 1988 and the suits were not brought in a timely manner. They are now barred by the statute of limitations.

*Id.* at 1301.

### 2. THE *FRANKS* AND CONSPIRACY CLAIMS ACCRUED IN 2000.

Plaintiff asserts a Fourth Amendment *Franks* claim, (Sixth Claim for Relief), based on the actions of the individual officers in 2000 premised on his allegedly coerced confession and the subsequent arrest affidavit, dated January 11, 2000, omitting information that would have undermined the probable cause determination. See [Doc. 96, ¶¶ 271 and Doc. 96-7]. Plaintiff asserts a conspiracy claim (Seventh Claim for Relief), based upon the same conduct involving the *Franks* violation [Doc. 96, ¶31, ¶276].

The Supreme Court's decision in *Wallace v. Kato,* 549 U.S. 384 (2006), is instructive. There, the Court, held a claim of false arrest accrued at the time legal process was initiated against the detainee.  After Wallace's murder conviction was overturned based on a lack of probable cause for arrest and the charges were dismissed, the arrestee sued respondent police officers under 42 U.S.C. § 1983 for false imprisonment. Wallace was fifteen years old when he was interrogated in police custody, confessed to a murder, and was detained until his conviction.   The Court held the fact that the arrestee's conviction was overturned had no bearing on the accrual of the cause of action for false imprisonment (associated with the arrest) which ended prior to the conviction.  The Court wrote:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process--when, for example, he is bound over by a magistrate or arraigned on charges. Dobbs, *supra*, § 39, at 74, n 2; Keeton, *supra*, § 119, at 888; H. Stephen, Actions for Malicious Prosecution 120-123 (1888). Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. 2 Keeton, *supra*, § 119, at 885-886; *see* 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p 3:36 (3d ed. 1996); 7 Speiser, *supra*, § 27:2, at 943-945. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Keeton, *supra*, § 119, at 888; *see also Heck, supra*, at 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383; 8 Speiser, *supra*, § 28:15, at 80. Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner's minority.

*Id*. at 389-390 (footnotes omitted).

In *Lindsey v. Myer*, 02:10-cv-1437-SU, 2012 U.S. Dist. LEXIS 46086 (D. Or. Feb. 13, 2012), the court applied *Wallace* to a *Frank's* claim and found the accrual date to be early on in the criminal process, once a copy of the affidavit was provided to the criminal defendant:

> It is undisputed that on October 3, 2006, the Lindseys obtained an affidavit from Mallory in which Mallory swore he never made certain statements attributed to him which were used by the Blackman defendants to secure the search warrant. Mallory also swore that other statements attributed to him in support of the warrant were misconstrued. (Compl. ¶ 46 and Ex. 2.) The Lindseys, however, maintain their *Franks* violation claim did not accrue until November 25, 2008, the date the last of their criminal charges were dismissed. Specifically, the Lindseys argue "the dismissal of the state prosecution . . . triggered all the procedural due process claims raised in this matter including issues surrounding the lawfulness of the warrant, entry to the house, *Brady/Franks* violations and the legitimacy of the prosecution itself." (Pl.'s Resp. 41.)
>
> The court disagrees. Under the Supreme Court's decision in *Wallace*, accrual of the § 1983 cause of action occurs when plaintiff has "a complete and present cause of action," *i.e.*, plaintiff can file suit and obtain relief. 549 U.S. at 388. Here, the Lindseys were aware of the injury to their constitutional rights on October 3, 2006, the date they received Mallory's affidavit describing the allegedly material misrepresentations made by the Blackman defendants in support of the first search warrant. Further, the Lindseys' argument they needed a determination of the search warrant's invalidity in the criminal action before they could proceed with their civil claims is unpersuasive. (Pl.'s Resp. 41 ("The warrant is presumed valid until, and unless, a judicial finding to the contrary.").) Rather, the Lindseys could and should have filed timely claims based on the alleged Franks violation.

*Id.* * 19-20.

With this in mind, Plaintiff's *Franks* and conspiracy claims accrued more than a decade before he filed the present lawsuit.  Under *Wallace*, the probable cause hearing of February 25, 2000, afforded the state trial court an opportunity to review the sufficiency of the evidence untainted by the alleged omissions or additions by the officers to the arrest warrant such that any Fourth Amendment based *Franks* claim transformed into a legal process-style malicious prosecution claim at that point.  At worst, Plaintiff's was aware of his purported injury by 2007

when he filed a Rule 35(c) and habeas corpus petition and application premised on his confession being coerced, both of which Plaintiff authored himself after he reached the age of majority. Indeed, these filings reflect Plaintiff understood the nature of his alleged injury – he was improperly questioned outside his mother's presence and coerced into confessing to playing some role in Ms. Johnson's murder. Consequently, the latest date Plaintiff can credibly contend the applicable state of limitations expired was August 7, 2007, nearly two-and-a-half years after he turned eighteen years old. He then waited until 2016—eleven years later--to file this lawsuit making it time-barred.

Plaintiff's conspiracy claim suffers the same time-based flaw. The conspiracy claim stems from the alleged underlying *Franks* violation. *See Dixon v. City of Lawton, Okla*., 898 F.2d 1443, 1449 (10th Cir. 1990) (stating that a Section 1983 conspiracy claim requires an underlying constitutional deprivation). Consequently the two claims accrued at the same time. Because the *Franks* claim accrued well outside of the applicable two-year statute of limitations period, so too did Plaintiff's conspiracy claim.

### B.    THE STATUTE OF LIMITATIONS HAS NOT BEEN TOLLED ON PLAINTIFF'S CLAIMS.

Plaintiff appears to recognize the fatal delay between when his claims accrued and when he initiated his lawsuit and attempts to overcome this hurdle by contending cognitive deficiencies precluded him from timely pursuing his claims. This attempt to toll the two-year statute of limitations fails. Plaintiff does not qualify as developmentally disabled and fails to show a disability during the relevant years when the claim accrued after his eighteenth birthday.

1.    **PLAINTIFF DOES NOT SUFFER A DEVELOPMENTAL DISABILITY AS REQUIRED TO TOLL THE STATUTE OF LIMITATIONS.**

Plaintiff alleges he suffers from mild mental retardation and learning disabilities and, as a result, the statutes of limitations were tolled pursuant to C.R.S. § 13-81-101 and § 13-81-103. Following the filing of the original Complaint and state court malpractice action against his criminal defense counsel, Plaintiff sought to avoid the statute of limitations defense by seeking a determination of suffering a developmental disability. A person with a developmental disability is defined in C.R.S. § 13-81-101(3) as "any person who is a minor under eighteen years of age, a mental incompetent, or a person under other legal disability and who does not have a legal guardian." [6] Colorado law expressly defines an individual with an intellectual and developmental disability as "a person determined by a community-centered board to have an intellectual and developmental disability and shall include a child with a developmental delay." *See* C.R.S. § 27-10.5-102(11)(b) (2005).[7] A developmental disability is further defined as:

> "Developmental disability" means a disability that is manifested before the person reaches twenty-two years of age, which constitutes a substantial disability to the affected individual, and is attributable to mental retardation or related conditions which include cerebral palsy, epilepsy, autism, or other neurological conditions when such conditions result in impairment of general intellectual functioning or

---

[6] Determining whether the statute of limitations has expired on a claim must be determined based upon the statute in effect at the time the claim accrues unless the General Assembly clearly intends otherwise. *See, T.D. v. Wiseman*, 415 P.3d 852, 855 (Colo. App. 2017) (applying the statutory definitions of developmental disability and the tolling statutes in effect in 2005 when Plaintiff's claims accrued.

[7] The statutory scheme describing developmental disability has undergone a number of reenactments and with modifications to the statutory language. The statute, C.R.S. § 27-10.5-102(11)(b) (2005), is substantially similar to C.R.S. § 25.5-10-237(1) (2018). *See, T.D. v. Wiseman*, 415 P.3d 852, 855-856 (Colo. App. 2017) (comparing statutory cites and legislative reenactments).

adaptive behavior similar to that of a person with mental retardation. Unless otherwise specifically stated, the federal definition of "developmental disability" found in 42 U.S.C. sec. 15001 et seq. shall not apply.

C.R.S. § 27-10.5-102(11)(a).[8]

In *Veren v. United States*, 575 Fed. Appx. 841 (10th Cir. 2014), the court addressed a tolling

argument from a plaintiff, applying Colorado law:

Four years after the statute of limitations expired, David Veren filed suit seeking damages from prison officials. The district court dismissed his claims as barred by the statute. Mr. Veren now asks us to overturn that result. He points primarily to the fact the limitations period for his suit may be statutorily tolled for persons "under disability." Colo. Rev. Stat. § 13-81-103. He says he was disabled within the meaning of the statute for a considerable time and as a result his lawsuit should be treated as timely filed.

Like the district court before us, we cannot agree. To invoke the applicable statutory tolling provision successfully a petitioner must show either that he was "mentally incompetent" or under a "legal disability" with no legal guardian. *See id.* § 13-81-101(3). But this Mr. Veren has failed to do. Mr. Veren claims that he suffered from (among other things) an affective disorder and clinical depression. But under Colorado law such conditions generally are not sufficient to establish mental incompetence. *See id.* § 27-10.5-135; *Southard v. Miles*, 714 P.2d 891, 898-99 (Colo. 1986) (noting that the term suggests a disorder that "grossly impairs judgment or capacity to recognize reality or to control behavior" (*quoting* Colo. Rev. Stat. § 27-10-102(7)). Neither has Mr. Veren been declared by a court to be under a legal disability. *See James v. Brookhart Lumber Co.*, 727 P.2d 1119, 1121 (Colo. App. 1986) ("[I]n order for a person to be deemed 'under a disability' . . . [he] must petition the court for a specific finding as to the existence of a legal disability."). To be sure, Mr. Veren claims that he was legally disabled because the Social Security Administration deemed him disabled for purposes of the Social Security Act. But to be found disabled under that Act, a person need only show that he's incapable of "substantial gainful activity" — a standard different than that found in Colorado's statutory tolling provision. See 42 U.S.C. § 423(d)(2)(A).

*Id* at 842.

---

[8] See, C.R.S. § 25.5-10-202(26)(a) (2018) for the current statute.

Plaintiff will argue he has received a determination by a community-centered board he suffers from an intellectual and developmental disability. *See*, *Graham v. Teller County*, 632 Fed. Appx. 461, 464 (10th Cir. 2015) (unpublished) and C.R.S. § 27-10.5-102(3) (2005). The one-page Determination of Developmental Disability from Gateway, Inc. proffered in support is dated April 26, 2017, and was first offered on May 16, 2017 [Doc. 77-1] during the pendency of first appeal in this matter, nearly a year after filing suit, and included as an attachment to the Plaintiff's Second Amended Complaint [Doc. 96-4]. The official determination/order of selection date in the Determination is retroactively applied to March 30, 2017, only. *Id*. There is no indication of further retrospective application, nor any determination the disability existed during the relevant period between Plaintiff's eighteenth and twentieth birthdays. No expert report was provided by Plaintiff to supplement the analysis. As a result, Plaintiff is not entitled to tolling of the statute of limitations. *Graham*, 632 Fed.Appx. at 464.

### 2. PLAINTIFF'S ABILITY TO REPRESENT HIMSELF IN *PRO SE* MATTERS ALSO PRECLUDES A FINDING OF A DISABILITY UNDER C.R.S. § 13-81-101, ET SEQ.

Plaintiff's ability to attend to his own business matters and represent himself in *pro se* matters also precludes a finding of a disability under Colorado law. In *Broyles v. Ft. Lyon Canal Co.*, 695 P.2d 1136, 1143 (Colo. 1985), the plaintiff alleged he was a "person under disability" within the meaning of C.R.S. § 13-81-101(3) and the statute of limitations should have been tolled. *Id. at* 1143. The plaintiff argued he was mentally incompetent and could not handle his own affairs. The Colorado Supreme Court, however, found the plaintiff was able attend to his business during the time period in which the limitations period was running. *Id.* at 1144.

Additionally, the Tenth Circuit has held an inmate is prohibited from using C.R.S. § 13-81-103 to toll the statute of limitations when he has filed legal documents and represented himself in other cases during the time period the inmate alleges he was "mentally incompetent." *Collins v. Ahard,* No. 95-1007, 69 F.3d 547, 1995 U.S. App. LEXIS 30834, at *2-4 (10th Cir. Oct. 26, 1995) (unpublished disposition).  Here, Plaintiff's prior *pro se* filings support this same conclusion, here, during the time period when he was twenty-two years old.

In 2007 Plaintiff, acting *pro se,* filed two separate petitions, in two separate jurisdictions, making the same allegations of ineffective assistance of counsel, illegal sentence and illegal search and seizure.

On January 12, 2007, when Plaintiff was approximately 22 years old, he filed a *pro se* Petition for Post-Conviction Relief Pursuant to Crim. P. 35(c) raising the issue of "ineffective counsel" as a basis for overturning his conviction. **Exhibit H. [9]**  Plaintiff specifically asserted his conviction was obtained "in violation of the or laws of the United States or the constitution or laws of this state."  See **Exhibit H**, p 3. Plaintiff prepared this petition himself without the assistance of counsel.   (Montoya Dep., p. 37, line 2 – p. 38, line 21; p. 310 lines 10 – p. 311, line 7, **Exhibit. I**)

Later that year, on August 9, 2007, Plaintiff, *pro se,* filed an Application for Writ of Habeas Corpus in the United States District Court for the District of Colorado, Case: 1:07-cv-01677-ZLW, **Exhibit J**.   Plaintiff wrote as the supporting facts:

Claim One:    Ineffective Counsel

Counsel did not object to certain things such as questions that the prosecution asked certain witnesses[.] Counsel did not conduct a full investigation in my case[.]

---

[9] A description of the 2007 filing is provided in the July 24, 2013, Petition For Post-Conviction Relief Pursuant to Crim. P. 35 (c), District Court for the City and County of Denver, Case Number: 00CR176 [Doc. 97-5, page 3].

Counsel did a very poor job in my case and faulty investigation in this case[.] Therefor Defendant should have his sentence overturned.

Claim two:     Illegal Sentence

Defendant should have been sentenced to a juvenile facility instead of an adult facility for the remainder of his natural life[.] At the age of 14 Defendant did not know anything about the legal system or proses (sic) therefore he should have been sentenced to a juvenile facility.

Claim Three:   Illegal search and seizure.

Detectives questioned Defendant outside of the presense (sic) of his mother without her permission[.] Detectives also confiscated evidence without a search warrant[.] Detectives also forced Defendant to confess to a crime he never commited[.] (sic) Therefore defendants (sic) confession was coerced because detectives forced him to lie[.]  Defendant was 14 years old at the time conviction was obtained due to faulty investigation and unconstitutional search and seizure.

*See*, Application for Writ of Habeas Corpus in the United States District Court for the District of

Colorado, Case: 1:07-cv-01677-ZLW, attached as **Exhibit J**, p. 4.

In the 2007 Application for Writ of Habeas Corpus United States Magistrate Judge Boyd

Boland issued an Order Directing Applicant to Show Cause, **Exhibit J** p. 17.   In response to an

Order to Show Cause, Plaintiff filed a handwritten response with attachments.  **Exhibit J,** p. 2.

Without the assistance of counsel, Plaintiff responded to Magistrate Judge Boland's Show Cause

Order and wrote:

To the United States District Court, "Response to order to show cause." Dear Sir or Madam.  I'm writing the court regarding my motion for "Show Cause" due to lack of time for review of my case [.]  Defendant is indegent (sic) to pay for counsel therefore the court issued Counsel for the defendant due to lack of funds to pay for counsel it is documented that defendant does not have funds to pay for counsel also defendant has been through four different attorneys in the past several years [.] one attorney passed away therefore defendant was given another attorney by the court [.] also the court lost some of the defendants Court transcripts therefore counsel had to file for motion of extension of time to file an appeal until time was finally up to file an appeal therefore Counsel had to file motion for extension to file an appeal several times until time was up to file an appeal before the extension deadline which

is also documented due to the court losing some of the defendants transcripts which counsel needed to file an appeal for the defendant, defendant had to file his post conviction on his own not having any knowledge about the legal system [.] defendant does not have any knowledge about the legal system therefore his case should be reviewed.  Respectfully submitted to the Court this day August 21, 2007.  Mr. Lorenzo Montoya.

**Exhibit J**, p. 22.

Montoya was directed to show cause as to why he was seeking relief outside the one-year limitations period that applies to filing a writ.  He responded by noting the difficulties he had with various lawyers and his lack of familiarity with the legal system.  He made no mention of any cognitive issues that impeded his ability to understand the injury he suffered or that prevented/delayed him from seeking relief.  United States Judge Zita Weinshienk noted as much in dismissing the petition, **Exhibit J**, pp. 30-31:

In the Response, Mr. Montoya asserts that he did not have enough money to pay for an attorney in his state proceedings. Applicant further asserts that he had four different attorneys to represent him over the past several years, that the state court lost his transcripts which counsel needed to file an appeal, and that he had to file his postconviction motion without assistance from an attorney.

Applicant fails to assert any extraordinary circumstances beyond his control that made it impossible for him to file a timely habeas application in this Court. Plaintiff's claim of insufficient monies to hire an attorney, presumably in his trial and direct appeal, does not state an extraordinary circumstance that would justify equitable tolling.

Applicant also does not assert how the loss of the court transcripts in his state criminal case caused him to file an untimely habeas action in this Court. Furthermore, Mr. Montoya concedes that he was represented by counsel during both his trial and his direct appeal.

As for legal representation in his postconviction motion, under the United States Constitution, Applicant is not entitled to counsel in a collateral review of his state criminal conviction. *See Pennsylvania v. Finley,* 481 U.S. 551, 555-56 (1987). Also there is no constitutional right to counsel under the Colorado State Constitution in Rule 35(c) motions. *Breaman v. People*, 939 P.2d 1348 (Colo. 1997).

To the extent that Mr. Montoya may be asserting that he is entitled to equitable tolling due to his ignorance of the law, the Tenth Circuit has found that it is well established that "ignorance of the law, even for an incarcerated prose [applicant], generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (*quoting Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)). This Court, therefore, finds that Mr. Montoya fails to demonstrate the existence of any extraordinary circumstances beyond his control that made it impossible for him to file his Application on time. Accordingly, it is

ORDERED that the Application is denied and the action is dismissed as barred by the one-year limitation period in 28 U.S.C. § 2244(d).

Plaintiff testified he prepared the Application alone without the assistance of legal counsel or another individual. He further testified that he had portions of his file available from the criminal attorney, but Mr. Montoya selected the materials to complete the forms, answered the individual questions, and signed the declaration under penalty. (Montoya Dep., p. 40, line 6 – p. 46, line 11; p. 311, line 1 – p. 312, line 13), **Exhibit I**.

Here, the Court can draw its own conclusions from these filings and need not rely on conclusory allegations regarding competence. *Stauffer v. Stegemann*, 165 P.3d 719 (Colo. App. 2006). Based on the Plaintiff's filings in 2007, it is clear he was not under any legal disability as defined by Colorado law. As such, the two-year statute of limitations cannot be tolled on this basis.

### 3. PLAINTIFF'S LEGAL MALPRACTICE CLAIM AND 35(C) PLEA AGREEMENT ALSO DEMONSTRATE HE IS NOT UNDER A LEGAL DISABILITY AND RECOGNIZED THE ALLEGED UNLAWFULNESS OF THE DEFENDANTS' CONDUCT.

Subsequent legal actions by the Plaintiff also refute his tolling argument. On June 24, 2013, the Petition For Post-Conviction Relief Pursuant to Crim. P. 35 (c), was filed in the District Court for the City and County of Denver, Case Number: 00CR176, by the same legal counsel who presented Mr. Montoya in his subsequent malpractice action against his criminal defense counsel.

The Petition For Post-Conviction Relief was filed without the need for a guardian ad litem or next friend, and with no suggestion Plaintiff was incompetent or incapable of retaining counsel or making decisions regarding the civil and criminal actions. Rather, the 2014 Cleveland Report demonstrated Plaintiff "has a rational and factual understanding of the proceedings and demonstrates an adequate ability to participate in his defense." [Doc. 96-1, p. 12]

On June 10, 2014, when he was approximately 29 years old, Plaintiff entered and signed a plea agreement with the Denver District Attorney's office and pled guilty to the felony of accessory to commit murder. The plea agreement was reached without involving a guardian ad litem or next friend, and with no suggestion Plaintiff lacked the capacity to act for himself.  Plaintiff's representations to the state District Court was relied upon by that Court for the determination Plaintiff could and did competently and voluntarily plead guilty.  *See generally Sanchez-Martinez v. People*, 250 P.3d 1248, 1254-55 (Colo. 2011) (describing requirements under Colorado law for a district court to accept a guilty plea as knowing, voluntary and intelligent); *People v. Venzor*, 121 P.3d 260, 262-63 (Colo. App. 2005) (describing requirements for addressing mental capacity and state of defendant in context of determining whether a guilty plea is knowing, voluntary and intelligent).

The District Attorney, Plaintiff's criminal defense counsel, the Court, and Plaintiff each acknowledged the basis for this plea agreement during the Rule 35(c) hearing:

> Ms. Benedetti (Deputy District Attorney): Judge, I would only note that our concession that defense counsel had been ineffective was conditioned upon the entry of the plea….
>
> As I told you then and I'll tell you now, I think the 35(c) hearing would have been a horse race. I think there were interesting issues. I think it would have been very close. So the fact that I am conceding that defense counsel was ineffective was only for the purposes of effecting this plea.

* * *

Ms. Polansky (Mr. Montoya's attorney): …Nonetheless, Your Honor, with regard to the plea—or the concession, rather, being contingent on the plea, I do agree with that representation.

* * *

The Court: …It is my understanding that as part of the agreement in this case you wish to plead guilty to an added Count 6, which is accessory to a crime, a Class 4 felony. That is, in part, an agreement made in reflection of the fact that the prosecution has agreed not to contest and to confess the Rule 35(c) motion…. Is that your understanding of what you're agreeing to and what you want to do?

The Defendant: Yes, Your Honor.

Reporter's Transcript of Hearing., [Doc. 1-2, at 4:7-17, 5:21-24; 6:21-7:9].

Plaintiff signed the Petition to Enter Plea Agreement without a guardian ad litem or other court appointed representative.  In plea agreement, Montoya initialed the following statements:

4. "I am not under the influence of any alcohol, medication, or drugs. My physical and mental health is satisfactory. I am thinking clearly."

5. "I have consulted with my lawyer concerning this matter, and I am satisfied with the advice given by my lawyer, Lisa A. Polansky."

* * *

9. "I understand the nature of the charge and elements of the offense to which I am pleading guilty (the elements are attached). I also understand that by pleading guilty I admit every element and give up all possible defenses."

10. "I expressly waive my right to trial by jury on all issues, including any factual issues that bear upon the penalty I will receive."

* * *

13. "I agree that there is a factual basis for the plea of guilty to the crime charged in this matter and waive the requirements of a showing of a factual basis for the plea."

* * *

15. "The decision to plead guilty is my decision and it has been made freely and voluntarily…I know that I do not have to follow my lawyer's advice and that I do not have to plead guilty. This is my decision to plead guilty."

* * *

18. "I have discussed the document and my plea fully with my lawyer."

**Exhibit L**, ¶¶4,5,9,10,13,15,18.

Again, Plaintiff's representations to the state court was relied upon by that Court for the determination Plaintiff could and did competently plead guilty.[10]    Plaintiff's present contrary claim does not meet the necessary elements to allow for tolling of the statute of limitations under Colorado law.  Stated more succinctly, if Plaintiff is legally incompetent then all legal proceedings since 2014 are void *ab initio,* and his original sentence is still valid.

While Plaintiff now claims to be mentally disabled, he was competent to file *pro se* legal pleadings in 2007, to plead guilty in 2016 in a knowing, voluntary, and intelligent manner to the satisfaction of the state court.  As the Tenth Circuit concluded, these types of activities are not the actions of an incompetent individual. In *Collins v. Ahart,* No. 95-1007, 69 F.3d 547, 1995 U.S. App. LEXIS 30834, at *2-4 (10th Cir. Oct. 26, 1995) (unpublished disposition), the plaintiff claimed he was a mentally ill person under Colorado law and the definitions of C.R.S. § 27-10-102(7).  The Tenth Circuit noted:

> The magistrate observed that during the period of his alleged incompetence Mr. Collins managed to pursue various administrative proceedings, to file and win an action pro se in small claims court, and to write several lucid letters to state and

---

[10] Plaintiff now argues [Doc. 197] that "Clearly, the factual basis is only accepted for the benefit of the bargain. When reading the entire transcript it is clear that the court, prosecution and defense all shared the understanding that Mr. Montoya's plea was done only to get the prosecution to concede his 35(c) so that he can be released after 14 years in prison."  Plaintiff is estopped from collaterally challenging the plea.  In Colorado, once the statutory and procedural requirements have been satisfied, a guilty plea is the equivalent of admitting all material facts alleged in the charge. *Allen v. Martin*, 203 P.3d 546, 564-565 (Colo. App. 2008); *Klen v. City of Loveland*, 661 F. 3d 498, 516 (10th Cir. 2011) ("Under Colorado law, a no-contest plea, unlike a guilty plea, does not estop the defendant from denying fault in a later civil action.")

federal district courts regarding other litigation. These are not the actions of an incompetent.

Id. at *2.[11]

Similarly, to now ascribe Mr. Montoya as a person with a mental disability, in light of these actions, and those of his counsel, contravene Tenth Circuit case law and Colorado law.

4.    **PLAINTIFF'S COMPLAINT DEMONSTRATES HE WAS LEGALLY COMPETENT IN FEBRUARY 2014.**

Further, alternatively, based on an attachment to the Plaintiff's Complaint, Plaintiff has been competent since at least December 7, 2013. Attached to the Plaintiff's Second Amended Complaint is a Retrospective Evaluation of Competence to Proceed, prepared by Dr. Cleveland [Doc. 96-1]. The report is dated May 14, 2014, and is based upon two interviews with Plaintiff, dated December 7, 2013 (for two hours) and February 24, 2014 (for three hours). The final report, dated May 14, 2014, is more than a month before Plaintiff's Rule 35(c) hearing with the state court. In the May 14, 2014, report, Dr. Cleveland claims Plaintiff suffered from mental deficiencies and likely did not understand the original criminal proceedings against him. The Cleveland Report, prepared more than two years before Plaintiff filed this case in June 2016 and before he entered into the 2016 plea agreement, concludes Plaintiff is legally competent:

> Overall, Lorenzo's score was in the normal range (26) and did not display any signs of gross cognitive impairment.

Retrospective Evaluation of Competence to Proceed, [Doc. 96-1], p. 7.

---

[11] The Tenth Circuit further addressed the definition of "mental incompetency" defined at C.R.S. § 27-10.5-135, explaining: "Thus, in this context the mental health professional's conclusory notation that Mr. Collins was 'incompetent' is at most a nosological observation, not a binding conclusion of law." *Id.* at *2, n.2. The Circuit found the actions of the Plaintiff to be probative when determining disability under a legal argument of incapacity.

> ***Lorenzo's current understanding of his past legal situation and current
> consequences are developed and rationally and factually accurate***. He understood
> the charges he was convicted of and can appreciate the difference in severity
> between a felony and misdemeanor. He understood the concept of evidence and
> could discuss past and current evidence related to his case. He understood the
> judge's job in his current 35(c) motion, as well as the district attorney's job and his
> attorney's job. He understood available plea options, the concept of a plea bargain
> and his right to testify on his behalf.

Retrospective Evaluation of Competence to Proceed, [Doc. 96-1], p. 8 (emphasis added).

> As part of assessing his potential for competence based abilities in 2000, Lorenzo's
> current competence was assessed. Although he still has limited cognitive
> functioning, ***he does not have significant deficits in his competence based
> abilities***. Although he needs repetitive explanation and legal guidance regarding
> legal concepts and court related issues, ***he has a rational and factual
> understanding of the proceedings and demonstrates an adequate ability to
> participate in his defense***.

Retrospective Evaluation of Competence to Proceed, [Doc. 96-1], p. 12 (emphases added).

Dr. Cleveland concludes, as a result of the facts available during this evaluation, Lorenzo's

competence most likely should have been questioned given the likelihood that he had significant

and readily evident deficits in his competence-based abilities." Retrospective Evaluation of

Competence to Proceed, [Doc. 96-1, p. 14].  There is no showing during the determinative years

when the statute of limitation expired, Plaintiff  was a person under a disability.  Accordingly,

based even on Dr. Cleveland's analysis, Plaintiff's claims are not tolled and are therefore barred

by the two-year limitations period.

     **5.    ALTERNATIVELY, THE STATUTE OF LIMITATIONS RUNS ON PLAINTIFF'S
CLAIMS WITH THE FILING OF THE BE PETITION FOR POST-CONVICTION
RELIEF PURSUANT TO CRIM. P. 35(C)(3).**

Regardless of any claim of incapacity, such incapacity no longer tolled the statute of

limitations under Colorado law once Plaintiff retained counsel to address the issues of his criminal

prosecution and the alleged errors of the Defendants.  The filing of the Petition for Post-conviction

Relief Pursuant to Crim. P. 35(c)(3) on June 24, 2013 begins running the two year statute of limitations. Notice to the attorney is notice to the client if the notice, or knowledge of it, relates to the proceedings for which the attorney has been employed. *Dickman v. DeMoss*, 660 P.2d 1 (Colo.App. 1982); *Brodeur v. Indus. Claim Appeals Office,* 159 P.3d 810, 813 (Colo.App. 2007). "We recognize the well-established rule that notice to an attorney is imputed to the client." *Noe v. Ward*, 754 F.2d 890, 892 (10th Cir. 1985). "Generally, notice to the attorney is notice to the client." *See also Padilla v. D.E. Frey & Co.,* 939 P.2d 475 (Colo. App. 1997) (applying this rule to notice of judgments). The Petition for Post-conviction Relief seeks judicial relief and specifically states "the alleged confession was coerced, involuntary, and is marked by classic signs of a false confession" *id.* at 4, as well as incorporating by reference the Arrest Warrant Affidavit. *See*, **Exhibit K**, pp. 3-4 and p. 35.

The June 24, 2013 Petition is critical of the DPD investigation and alleges a coerced confession. The factual support for the Petition specially discusses the misconduct and errors of the police in conducting their investigation and the subsequent arrest and criminal prosecution. The representation in 2013 relates to the proceedings here, and the claimed violations of Plaintiff's civil rights claims. As such, any disability was lifted and the statute of limitations expired on June 24, 2015.

## C. DEFENDANT PRIEST IS PROTECTED BY QUALIFIED IMMUNITY ON PLAINTIFF'S FRANK CLAIM.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts

qualified immunity, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) *citing Pearson v. Callahan*, 555 U.S. 223 (2009).

The Supreme Court instructed in *Franks* that, where a criminal defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-56.

Plaintiff cannot meet his burden of proof, here, namely that Defendant Priest "knowingly and intentionally, or with reckless disregard for the truth" added materials misstatements or factual omissions to the arrest affidavit. (holding that assistant county attorney was entitled to qualified immunity because he did not act recklessly when he erroneously told an officer who was filling out a warrant application that the person to be arrested for suspected drug offenses was the wife of a known marijuana cultivator).

Defendant Robert Schneider testified that he served as a scribe, only, and that District Attorney Lamar Sims and Defendant Priest provided a synopsis of the Montoya interview to him. Defendant Priest testified that Defendant Schneider is incorrect, stating that "It's not how I would have done it," that any information included in an affidavit would have been typed by Defendant Priest directly. While there is a conflict regarding Priest being involved, Plaintiff cannot meet the burden of showing Priest acted "knowingly and intentionally, or with reckless disregard for the truth." Defendant Schneider testified that he does not recall which of the two individuals provided what information, or watched the interview, and "I don't know which one specifically said that

statement or which one specifically said the other."  Here, it remains the plaintiff's burden to demonstrate the requisite state of mind.  *See, United States v. Comer,* 565 Fed. Appx. 729, 732 (10th Cir. 2014).

Absent in the record is any evidence that demonstrates Defendant Priest violated Plaintiff's constitutional right, under the first prong of the qualified immunity argument.   Further corroborating a lack of the requisite state of mind, notably absent from the Affidavit is that portion of the crime scene investigation specifically involving Priest.   Defendant Priest was primarily involved in the criminal investigation as it related to the crime scene, including a bloody shoe pattern found at the crime scene.   Plaintiff Montoya wore shoes with a consistent class characteristic shoe pattern during the interrogation.  He stated these shoes belonged to his cousin, Luke Anaya.   Luke Anaya, who was also at the police headquarters, entered Montoya's interrogation and stated that those shoes had been worn by Plaintiff on New Years Eve, the night of the murder.  The shoes that Plaintiff Montoya wore during the interview could not be excluded as being at the crime scene.  Substantial physical evidence was available to Priest to include in the Affidavit.

### D.     SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIM FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS.

Plaintiff fails to demonstrate a conspiracy to violate civil rights under 42 U.S.C. §§ 1983. To succeed on a claim of conspiracy to violate civil rights under a 42 U.S.C. § 1985(3), a plaintiff must establish (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993).

In a case granting summary judgment on a conspiracy claim, *Carbajal v. St. Anthony Cent.*

*Hosp.,* No. 12-cv-02257-REB-KLM *62, 2015 U.S. Dist. LEXIS 80896 *62 (D. Colo. April 7,

2015), provides the following:

> The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a
> constitutional or federally protected right under the color of state law" is actionable.
> *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). However, in order to succeed
> on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must plead and prove
> not only a conspiracy, but also an actual deprivation of rights; pleading and proof
> of one without the other will be insufficient." *Id.* Further, "[w]hile a deprivation of
> a constitutional right is essential to proceed under a § 1983 claim, proof of an
> agreement to deprive will often require examination of conduct occurring prior to
> the deprivation." *Id.* at 701-02. To establish the existence of a conspiracy, a plaintiff
> seeking redress must show that there was a "single plan, the essential nature and
> general scope of which [was] known to each person who is to be held responsible
> for its consequences." *Id.* (internal citations omitted).

*Id.* * 62-63.

As argued above, Plaintiff has not demonstrated Defendant Priest "knowingly and

intentionally, or with reckless disregard for the truth."  Furthermore, Plaintiff has not

shown an agreement among the defendants towards a single plan.

### E.     INCORPORATION OF ALL OF DEFENDANT THE CITY AND COUNTY OF DENVER'S AND INDIVIDUAL DEFENDANTS' APPLICABLE ARGUMENTS

Defendants, pursuant to Fed. R. Civ. P. 10(c), hereby incorporate by reference all of the

arguments and authorities raised in Defendant the City and County of Denver's and the Individual

Defendants' Motions for Summary Judgment applicable to the Plaintiff's claims against Defendant

Priest.

**WHEREFORE**, Defendant Jonathan Priest respectfully requests that this court grant his

Motion for Summary Judgment Plaintiff's Franks and Conspiracy Claims with prejudice, and for

all other and further relief as this Court deems just and appropriate.

Respectfully submitted this 20th day of July 2023.

**LASATER & MARTIN, P.C.**

By:  */s/ Peter H. Doherty*                    .
Peter H. Doherty
8822 S. Ridgeline Blvd., Suite 405
Highlands Ranch, CO 80129
Telephone: 303-730-3900
Facsimile: 303-730-3939
E-mail: Peter@LasaterandMartin.com
*Attorneys for Jonathan Priest,*
*in his individual capacity*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT JONATHAN PRIEST'S MOTION FOR SUMMARY JUDGMENT**, was electronically filed with the Clerk of Court using the CM/ECF system, on July 20, 2023 and served on the following:

David Fisher, Esq.
Jane Fisher-Byrialsen, Esq.
Fisher & Byrialsen, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
Phone: 303-256-6345
David@FBLaw.org
Jane@FBLaw.org
*Attorneys for Plaintiff*
*Lawrence Rubin Montoya*

Jonathan Cooper, Esq.
Assistant City Attorneys Denver City Attorney's Office
Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202
*Attorneys for Defendant Denver*
*and Official Capacity Claims*

Eric M. Ziporin, Esq.
James Kadolph, Esq.
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Ste. 700
Denver, Colorado 80210
eziporin@sgrllc.com
*Attorney for Michael Martinez,*
*in his individual capacity*

Andrew D. Ringel, Esq.
Hall & Evans, LLC
1001 17th Street, Suite 300
Denver, CO 80202
ringela@HallEvans.com
*Attorney for Defendant Martin E. Vigil,*
*in his individual capacity*

*s/ Kate Braden*