**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-1457- JLK-SKC

LAWRENCE RUBIN MONTOYA,

Plaintiff,

v.

CITY AND COUNTY OF DENVER;
DETECTIVE MARTIN E. VIGIL;
DETECTIVE MICHAEL MARTINEZ;
LIEUTENANT JONATHAN W. PRIEST; and
DETECTIVE R.D. SCHNEIDER, JR., in their individually and official capacities,

Defendants.

---

**DEFENDANT MARTINEZ'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, **MICHAEL MARTINEZ**, by his attorneys, **ERIC M. ZIPORIN,**
**COURTNEY B. KRAMER,** and **JAMES T. KADOLPH** of the law firm of **SGR, LLC**, hereby
submits his Motion for Summary Judgment as follows:

## I.    INTRODUCTION

This case arises out of the interview and prosecution of Lawrence Montoya ("Montoya")
in Denver, Colorado during the winter of 2000. Because the facts of this case have been extensively
recounted both in Motions to Dismiss, and the other Defendant's Motions for Summary Judgment,
Defendant Martinez provides an abbreviated recounting of relevant facts to this case.

On the morning of January 1, 2000, Ms. Emily Johnson was murdered. In connection with
her murder, her Lexus was stolen. The Lexus was later found in a neighborhood in Denver

Colorado. Montoya's fingerprint was found on one of the back doors of that car. He was asked to attend an interview with Denver Police Department homicide detectives. He attended that interview.

Defendant Michael Martinez ("Martinez") attended that interview, in addition to a senior detective, Defendant Martin Vigil. *See* **Def.'s Ex. D-K**. Martinez provided some support during the interview, and asked several questions and made several statements to Montoya. *See* **Def.'s Ex. D-H**. Martinez attended the interview for a little over an hour. *Id.* After Montoya indicated that he was willing to take a polygraph test, Martinez left the interview and did not return. *See* **Def.'s Ex. H-K**. After Martinez left the interview room, Montoya made several incriminating statements to detectives. *Id.*

Later, other detectives wrote a summary of the interview with Montoya. *See* **Def.'s Ex.** O. The same night, other detectives drafted an Affidavit in Support of an Arrest Warrant (the "Affidavit") attesting that probable cause existed to arrest him. *See* **Def.'s Ex. B.**

Martinez now moves the Court to grant summary judgment on all outstanding claims against him. Martinez asserts qualified immunity. In support of this, Martinez makes the following arguments: (1) discovery has revealed that Martinez's conduct does not amount to a constitutional violation; and (2) even if it was a constitutional violation, such violation was not clearly established in January 2000.

## II.    <u>STANDARD OF REVIEW</u>

Summary judgment should be granted where the moving party shows the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it is essential to the proper disposition of the claim. *Adler v. Wal-*

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue in either parties' favor. *Id.*

### III.    MOVANT'S STATEMENT OF MATERIAL FACTS ("MSMF")

**A.    Defendant Martinez.**

1.    On January 10, 2000, Michael Martinez was a homicide detective with the Denver Police Department. **Def.'s Ex. A**, ¶ 2.

**B.    Facts of the Murder and Subsequent Investigation.**

2.    On the morning of January 1, 2000, Ms. Emily Johnson was murdered. **Def.'s Ex. B**, 1.

3.    Then-detective Martinez participated in a limited role in the case - limited to three events of the background investigation. **Def.'s Ex. A**, ¶ 2, 5-8.

4.    Detective Schneider was the primary for this investigation, meaning he was the supervisor taking charge of the investigation. **Def.'s Ex. H**, 51:20-25.

5.    Martinez was not assigned the case and was not the "secondary" detective in the case. *Id.* at 53:3-9.

6.    Martinez then participated in the interview of Lawrence Montoya. **Def.'s Ex. A**, ¶ 3; **Def.'s Ex. D-H.**

7.    Martinez was present in the room for some time. **Def.'s Ex. D, E, F** (0:00:00-0:00:23).

8.    Martinez then left the room. **Def.'s Ex. F** (0:00:23).

9.    Martinez later returned to the room. *Id.* at (0:03:26).

10.     Martinez received a message on the computer in the room, instructing him to inform Montoya that Nick Martinez had implicated his presence at the scene. **Def.'s Ex. A**, ¶ 15.

11.     Martinez eventually left the interview room. **Def.'s Ex. H** (0:15:45).

12.     Martinez did not return to the interview room. **Def.'s Ex. I-K**.

13.     At the time Martinez left the interview room and did not return, Montoya had not admitted to being present at the scene of the murder, nor had he admitted to any inculpatory facts. **Def.'s Ex. H** (0:15:45-0:20:10), **Def.'s Ex. I-K**; **Def.'s Ex. N** 183: 12-25; 184: 1.

14.     Martinez did not draft the Affidavit, as it was drafted by Defendant Schneider. **Def.'s Ex. B**, 3; **Def.'s Ex. C, 41: 23-25.**

15.     Martinez did not participate in the drafting process of the arrest warrant. **Def.'s Ex. C**, 73: 3-16.

16.     The video of the interview of Montoya was not used in drafting the Affidavit, and the drafter did not view the interview himself. **Def.'s Ex. C**, 124: 21-25; 125: 1-12; 73: 3-12.

17.     The summary of the interview was not drafted by Martinez. *Id.*

18.     The summary was not reviewed in preparation for drafting the Affidavit. *Id.*

19.     Martinez did not draft any document related to the interview. **Def.'s Ex. A**, ¶ 41.

20.     After departing the interview, Martinez did not provide other detectives with information used in the preparation of the Affidavit, or aid in the preparation of the Affidavit. with any other detectives following the interview. *Id.* at ¶ 42-45.

21.     The Affidavit does not contain any inculpatory information that could be construed to have been adduced by Martinez or from when Martinez was in the room. **Def.'s Ex. D, E, F, G, H** (0:00:00-0:15:45); **Def.'s Ex. B**.

22.    During the interview, Martinez did not speak to the primary detective about what was going on in the interview when he left the room. **Def.'s Ex. M**, 23: 7-13.

23.    During the interview, Martinez did not suggest any improper facts to Montoya not relayed to him by other detectives. Likewise, Martinez did not physically intimidate Montoya. **Def.'s Ex. A**, ¶ 37-38.

24.    During the interview, Martinez entered the room after leaving for a short period. During that time, Detective Vigil had informed Montoya that his shoes appeared to match those at a crime scene. **Def.'s Ex. A**, ¶18.

25.    Because Martinez arrived in the middle of this line of questioning and because he was told that they matched, Martinez believed that Montoya's shoes matched those believed to be present at the scene of the crime. *Id.* at ¶ 20-21.

## IV.    ARGUMENT

Montoya's only two remaining claims against Martinez are: (1) a claim under the Fourth Amendment, alleging violations of *Franks v. Delaware*, 438 U.S. 154 (1978); and (2) a conspiracy claim alleging the same. Both claims are brought pursuant to 42 U.S.C. § 1983.

"The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant raises the qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Cummings v. Dean*, 919 F.3d 1227, 1239 (10th Cir. 2019).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Felders v. Malcolm*, 755 F.3d 870, 877-78 (10th Cir. 2014). Importantly, this element is analyzed under "the longstanding principle that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). Montoya cannot meet this burden as to Martinez.

A.    **Montoya's *Franks* Claim against Martinez Should be Dismissed.**

Defendant respectfully submits that the Court should grant summary judgment in his favor and against Montoya with regard to the *Franks* claim.

"In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks*, 438 U.S. at 155-56). A *Franks* claim requires a plaintiff to demonstrate that (1) an officer's affidavit supporting an arrest warrant application contains a reckless misstatement or omission; and (2) that misstatement or omission is material. *See United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015).

Importantly, a § 1983 claim must always allege the personal participation of a defendant. *See Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 768 (10ᵗʰ Cir. 2013). Thus, in the context of a *Franks* claim, where personal participation may be demonstrated in several different ways, Montoya must demonstrate that statements made by each defendant were: (1) deliberately or recklessly false; and (2) relied upon by the affiant in drafting an arrest affidavit. *See United States v. Kennedy*, 131 F.3d 1371m 1376 (10th Cir. 1997).

Montoya's *Franks* claim against Martinez fails to surmount qualified immunity. First, the record reveals that Martinez did not elicit (nor was present for) any statements used in the preparation of the Affidavit which demonstrates that he did not violate the Constitution. Finally, assuming, *arguendo*, that a constitutional violation occurred, such a violation was not clearly established in January of 2000.

1.      Defendant Martinez did not violate Montoya's Constitutional Rights.

The state of the evidence in this case, following discovery, has confirmed that Defendant Martinez did not violate Montoya's constitutional rights.[1]

Here, the undisputed facts in the record demonstrate that not only did Martinez not provide any information used in the Affidavit, but also the individual who drafted the Affidavit did not consult with Martinez and did not consult any documents drafted by Martinez. MSMF, ¶ 14-22.

---

[1] Previously in this case, the Tenth Circuit has held that a Defendant personally participates in a *Franks* violation when that person provides information for use in an affidavit or statement presented to the court. *See Montoya v. Denver II*, No. 21-1107, 2022 WL 1837828, *5 (10th Cir. June 3, 2022). Martinez submits that the record now demonstrates that he did not personally participate in any constitutional violation, providing an alternate ground for summary judgment. Because this argument is closely related to Martinez's arguments asserted in support of qualified immunity on the *Franks* claim, Martinez directs the Court to that argument in the interests of brevity. *See Supra*, 7-13.

The record demonstrates that Martinez was not present in the interview room for any inculpatory statements. *Id.* at ¶ 13. The Affidavit does not display any inculpatory facts that could be construed to have been made when Martinez was interviewing Montoya (or was in the room for). *Id.* at ¶ 21. Finally, the record demonstrates that the same individual did not review the video of the interview. *Id.* at ¶ 16. As a result, there is no evidence in the record that Martinez violated Montoya's constitutional rights as no statements from or elicited by Martinez are present in the Affidavit, and the individual preparing that Affidavit did not review any statements from Martinez in preparing that arrest warrant. *Id.* at ¶ 14, 15, 19, 22. Indeed, the method of questioning used by Martinez did not suggest facts to Montoya and was not physically imposing either. *Id.* at ¶23. Accordingly, Martinez respectfully asserts that Montoya cannot demonstrate a genuine material fact in dispute regarding whether Martinez caused a *Franks* violation.

   a.  *Defendant Martinez Did Not Elicit Statements Used in the Preparation of the Affidavit*

The Affidavit, labeled as Defendant Martinez's **Exhibit B**, is the central document relevant to Montoya's *Franks* and conspiracy claims. The Affidavit includes several categories of information that recaps the investigation up to the moment when Montoya allegedly made inculpatory statements. See Def.'s Ex. B, 1-2. On the second page, starting with the tenth paragraph, the Affidavit makes statements intended to supply probable cause to arrest Montoya. Those statements include:

- That Montoya, Nicholas Martinez, and Lloyd Martinez went to Emily Johnson's house to steal her car;

- That Montoya saw those three individuals gained entry to Ms. Johnson's home;

- That Montoya saw Nick Martinez arming himself with a rock;

- That Montoya disclosed that he and other individuals encountered Ms. Johnson sleeping on her couch and confronted her.

- That Montoya saw Nick Martinez and Lloyd Martinez striking her repeatedly;

- That the three individuals searched for valuables in Ms. Johnson's home, unsuccessfully;

- That the three individuals found Ms. Johnson's car keys and continued to assault Ms. Johnson;

- That Montoya saw Ms. Johnson dragged from the living room to the rear patio;

- The prospect of spewing lighting fluid was discussed, in order to destroy evidence; and

- That Montoya, Nick Martinez, and Lloyd Martinez all fled the scene in Ms. Johnson's Lexus.

*Id.* at 2-3. Defendant Schneider prepared the Affidavit. MSMF, ¶ 14. Defendant Schneider did not watch either Defendant Vigil or Martinez conduct the interview of Montoya. MSMF, ¶ 16. Defendant Schneider did not review the video or audio of the interview between Montoya, Defendant Vigil, Montoya's mother, and Martinez. *Id.* at ¶ 16.

However, not only was Martinez not involved with the post-interview affidavit drafting process – he was not even in the room, let alone did he elicit any of the facts that were included in the Affidavit. *Id.* at ¶ 21, 22, 13, 14. Montoya admitted to being present at the scene of the crime only *after* Martinez had left the interrogation room. *Id.* at 13. For each of the questions and answers that could supply the information identified in the Affidavit, Martinez was not present in the room. *Id.*

This distinction is important as Montoya had not even admitted to being present at Ms. Johnson's house until after Martinez left the room. MSMF, ¶ 13. This, in combination with Defendant Schneider's representations regarding what information he utilized in creating the Affidavit, is enough to demonstrate that Martinez did not participate in a constitutional violation. *Id.* ¶ 15-18.

Martinez anticipates that – despite the fact that no facts adduced by Martinez were included in the Affidavit – Montoya will still argue that his interview caused a *Franks* violation. Defendants anticipate that Montoya will argue that Martinez's method of interviewing Montoya caused him to falsely confess to a crime. However, Martinez's conduct in the interview does not amount to a constitutional violation.

Specifically, Martinez – while present for elements of the interview – did not act in a manner that courts have deemed to be sufficient to lead to liability under *Franks.* Again, Martinez emphasizes that he was not present when any of the statements that were arguably related to the statements in the Affidavit were produced. MSMF, ¶ 13. Without a nexus between the direct questioning of Martinez to any inculpatory statements, he cannot be held liable under *Franks* for statements made in the Affidavit. *See Ante,* 10-13. To the extent that Montoya intends to assert that Martinez's conduct still subjects him to liability under *Franks*, such an argument is more properly analyzed under claims already dismissed by this Court and the Tenth Circuit. The essential factual nexus to *Franks* claims is the Affidavit.[2]

---

[2] The Supreme Court emphasized this in *Franks* itself. *See Franks*, 438 U.S. at 171 (limiting the application of *Franks* to the content in an affidavit before the Court); *Melton v. Phillips*, 875 F.3d 256, 262-63 (5th Cir. 2017) ("The Supreme Court expressly stated that the Franks rule is a narrow one.")

i.        *Analysis of Sanchez v. Hartley*

When viewed through the lens of relevant case law, Montoya's inability to demonstrate a constitutional violation against Martinez becomes evident. In *Sanchez v. Hartley*, 299 F.Supp.3d 1166 (D. Colo. 2017), the plaintiff brought a similar claim premised on a Fourth Amendment *Franks* violation. The Court denied summary judgment to each group of defendants – but the Court's analysis is instructive. In *Sanchez*, there were two groups of defendants who moved for summary judgment on the basis of a lack of causation.[3] *Id.* at 1193-95. The first group of defendants included two detectives who performed initial interviews of a suspect, where the plaintiff confessed to several incriminating aspects of two separate break-ins at a local neighborhood. *Id.* at 1171-74. The second group of defendants consisted of a detective who administered a polygraph to the plaintiff, and after the polygraph the plaintiff made a written confession that incriminated himself to the detective. *Id.* at 1180-83.

In moving for summary judgment, both of those groups of defendants asserted that they did not cause the plaintiff's prosecution. *Id.* at 1193-95. The first group of detectives argued that (despite the fact that they were present for and elicited a confession) they did not cause the ultimate prosecution of the plaintiff. *Id.* at 1193-94. The plaintiff's causation theory as to these two detectives alleged that the detectives knew of (he alleged) objective evidence of the falsity of the confession that they had personally witnessed. *Id.* The plaintiff then alleged that the information the detectives became aware of in their interrogation was the *same* information that caused a prosecutor to ultimately dismiss the criminal charges against the plaintiff. *Id.* To support that

---

[3] Several other defendants existed in the case but did not move for summary judgment on similar grounds.

allegation, the plaintiff introduced deposition testimony and objective evidence in the form of a report presented to the prosecutor that caused him to dismiss the case. *Id.*

The polygraph examiner detective argued that his alleged "limited role" in administering the polygraph test entitled him to summary judgment. *Id.* at 1194-95. The plaintiff argued that the fact that (he alleged) that the polygraph examiner produced a false (written) confession demonstrated a material fact in dispute on causation. *Id.* Indeed, the plaintiff argued that the written confession produced by the polygraph examiner was quoted verbatim in the affidavit for an arrest warrant. *Id.*

The court in *Sanchez* sided with the plaintiff on both points. As to the detectives, the fact that they had (allegedly) coerced a confession, combined with evidence that the defendants knew of the precise facts that caused the prosecutor to dismiss the criminal charges demonstrated that material facts were in dispute regarding whether the detectives had caused the plaintiff's constitutional violation. *Id.* at 1194. With regard to the polygraph examiner, the plaintiff's allegation that the confession was false, combined with the fact that his written confession to the polygraph examiner was quoted verbatim in the arrest affidavit was enough to demonstrate a material fact in dispute regarding the examiner's constitutional violation. *Id.* at 1194-95.

*Sanchez* highlights the distinction between general "lack of participation" arguments in this context and the facts before the Court in this motion. Here, it is undisputed that Martinez was not in the room when Montoya confessed to any of the relevant facts that were included in the Affidavit. MSMF, ¶ 13. It is undisputed that Martinez was not consulted by any individuals who drafted the Affidavit. *Id.* at ¶ 14-20. It is undisputed that the drafter of the affidavit did not consult

the video of the interview with Martinez present. Indeed, it is undisputed that Martinez did not draft any documents relied upon by the individuals who drafted the affidavit.

ii.     *Analysis of Pierce v. Gilchrist*

*Pierce v. Gilchrist* reinforces how Martinez did not violate the constitutional rights of Montoya. 359 F.3d 1279 (10th Cir. 2004). In *Pierce*, one of the defendants was a police forensic analysist. *Id.* at 1282. That forensic analyst allegedly performed an analysis of the plaintiff's hair in relation to a sexual assault investigation. *Id.* That analysis was performed pursuant to a waiver of rights, which was *contingent* on an agreement to let the plaintiff go if the hair did not match that found at a crime scene. *Id.* Five minutes after receiving the sample, the analyst informed officers that the plaintiff's hair matched the hair found at the scene of a sexual assault. *Id.* Various scientific defects with the analyst's conclusion existed. *Id.* Indeed, a (far later) second analysis of the same evidence exonerated the plaintiff, causing him to be released from jail. *Id.* at 1285.

The Court in *Pierce* found these allegations to be sufficient to state a claim against the forensic analyst. *Id.* at 1295-96. Simply put – the forensic analyst had lied about information that both directly caused the plaintiff's detention but was also information that was an "inseparable basis" of the criminal prosecution of the plaintiff. *Id.* at 1293. As with *Sanchez*, *Pierce* is readily distinguishable. The falsified forensic report in *Pierce* was personally prepared by the defendant who asserted that her participation was insufficient to state a constitutional violation. That report was – by a waiver agreement – *the* basis for the plaintiff's continued detention. Likewise, a falsified forensic report has a clear nexus to the intent of a *Franks* claim as she omitted information from her report that would have vitiated probable cause to prosecute the plaintiff.

iii.     *Analysis of Melton v. Phillips*

13

Given the state of the evidence at summary judgment, the Fifth Circuit's *en banc* opinion in *Melton v. Phillips,* 875 F.3d 256, 263 (5th Cir. 2017), is helpful and instructive. In *Melton*, the court was faced with the aftermath of a prosecution of plaintiff, who was mistaken for another with a similar name. *Id.* at 258-59. Plaintiff brought a *Franks* claim based on the affidavit for his arrest and the subsequent criminal documentation that was supplied to the court. *Id.* at 259-260. The defendant officer in *Melton* prepared an incident report that alleged that a "Michael David Melton" assaulted an individual. *Id.* at 258-59. The incident report included identifying information including the plaintiff's date of birth and ethnicity. *Id.* at 260. There was a factual dispute regarding how the defendant had gained knowledge of the plaintiff's date of birth. *Id.* There was no dispute that the information identified by the defendant was never reviewed by a judge. *Id.* at 259, N.1.

*Melton* held that officers who deliberately or recklessly provide false, material information for use in an affidavit are subject to liability under Franks. *Id.* at 264. *Melton* also clarified that officers who make knowing and intentional omissions that result in a warrant being issued without probable cause are subject to liability under *Franks*. *Id.* In resolving the claims before the court, *Melton* held that the lack of facts indicating that the defendant officer helped prepare the eventual criminal complaint warranted entering summary judgment in favor of the officer and against the plaintiff. *Id.* at 264-65. Specifically, the court found that the lack of evidence that information from the defendant officer's incident report was used in the criminal complaint precluded a finding of a disputed material fact. *Id.* at 265.

Previously on appeal in this case, the Tenth Circuit's opinion approved of the standard set forth in *Melton*, which required a finding that a defendant officer who deliberately or recklessly provides false information for use in a warrant. *See Montoya II*, *5 ("Melton recognized that an

officer is subject to liability on a Franks claim "if he helped prepare the complaint by providing information for use in it." *Id*. [] That is just what Mr. Montoya alleges here.")

On the record before the Court, however, Montoya's allegations alone are not sufficient to meet his heavy burden to overcome qualified immunity at this stage of the litigation. As explained above, the record demonstrates that Martinez did not provide any information that was used in the Affidavit. MSMF, ¶ 13. Martinez *was not present* when Montoya made any inculpatory statements related to any of the statements in the Affidavit. *Id.* Likewise, Martinez was not involved in the process of preparing or consulting in drafting the Affidavit. *Id.,* ¶ 14-19. Under the rule from *Melton* recognized by the Tenth Circuit in *Montoya II*, the record simply does not demonstrate that Martinez violated Montoya's constitutional rights.

When viewed in the context of *Pierce* and *Sanchez*, the distinction between the participation of those defendants and Martinez is conspicuous. In *Pierce*, the defendant analyst attempted to shield the fact that she had fabricated the results of a forensic test (that, had performed correctly would have required the defendant to be released on the spot) by asserting that she did not initiate the prosecution against the plaintiff. 359 F. 3d at 1293. However, that defendant had provided knowingly false information to be used in the arrest affidavit by supplying incriminating information that the plaintiff's hair matched that found at the crime scene. *Id.* at 1282. The defendants in *Sanchez* each personally elicited a confession that the plaintiff alleged was false – which contributed to the plaintiff's prosecution. 299 F.Supp.3d at 1193-95. The same is simply not true of Martinez's conduct as viewed in the undisputed facts of the case as well as from the video of Montoya's interview and the subsequent documentation. MSMF, ¶ 13-19. Indeed, Martinez's conduct is even dissimilar to the defendant in *Melton* who had placed mistaken

15

inculpatory information into the record. 875 F.3d at 258-59. Accordingly, Martinez respectfully requests that this Court find that Montoya has not met his burden to demonstrate that his constitutional rights were violated by Martinez and enter summary judgment in favor of him on both of the remaining claims.

  b.  *Martinez Did Not Act Knowingly or Recklessly.*

Neither can Montoya demonstrate that Martinez knowingly or recklessly misrepresented facts to Montoya during the time that he interviewed Montoya. To demonstrate that Martinez acted recklessly or knowingly, Montoya must make a "substantial showing of . . . reckless disregard for the truth." *Kapinski*, 964 F.3d 908. (citing *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). Montoya must point to evidence that "the officer in fact entertained serious doubts as to the truth of his allegations." *Id.* (citing *Stonecipher*, 759 F.3d at 1142). Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations. *Id.*

The record before the Court is devoid of any evidence of Martinez's recklessness of any facts that were misstated or omitted in the Affidavit. As detailed above, Martinez was not present in the interview room for any of the relevant facts in the Affidavit. Accordingly, the video footage alone demonstrates that Martinez did not act recklessly. While the Court may infer recklessness from the totality of the circumstances in some cases, such an inference would not be permissible when the evidence demonstrates that Martinez was not present for, made, or elicited statements that he knew were false to or from Montoya.

To the extent that Montoya argues that Martinez's questions that he asked inside of the interview room somehow contributed to the statements made when he was out of the room, the statements that Martinez did make are not sufficiently related to the Affidavit to even be considered

under *Franks*. *Franks* is a narrow cause of action, specifically concerned with statements made in arrest affidavits or other documents filed with a Court. Martinez cannot exhibit recklessness with regard to statements he neither made nor elicited from Montoya. To the extent that Montoya argues that Martinez acted recklessly with regard to non-inculpatory statements made to him or that he made while in the interview room with Montoya, those statements simply have no nexus to a *Franks* claim.

Accordingly, Montoya cannot meet his heavy burden to demonstrate that Martinez acted recklessly or knowingly as he was not present at time the Affidavit statements were made.

2.    Assuming that Martinez Violated Montoya's Constitutional Rights, such a violation was not clearly established.

Even assuming that Montoya can establish that Martinez violated his constitutional rights, Montoya must also overcome Martinez's qualified immunity by providing clearly established law. In determining whether a right is clearly established, Montoya must identify Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) recognizing an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Montoya's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated an individual's civil rights. *White v. Pauley*, 580 U.S. 73, 80 (2017). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (emphasis in original). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotations and citation omitted).

Thus, in cases where the plaintiff has alleged that an officer acted with reckless disregard for the truth in the warrant application, the plaintiff must "identify a case where an officer acting under similar circumstances [to Martinez] was held to have violated the Fourth Amendment." *Harte v. Johnson County*, 864 F.3d, 1154, 1202 (citing *White*, 580 U.S. at 80).

Here, Montoya cannot do so. As analyzed above, there is no binding authority on this Court that establishes an individual like Martinez – who was not present when the allegedly incriminating statements were made and was not consulted by the drafting parties – violated an individuals' constitutional rights under *Franks*. The weight of the authority examined above may establish such a right if the individual was directly involved in the process of securing evidence *that was used* in preparing the affidavit. However, neither *Pierce* nor the weight of the authority of other circuits, nor any Supreme Court precedent establishes Martinez's conduct as unconstitutional. Likewise, Montoya will not be able to supply any other authority not cited above to carry their burden.

Accordingly, Martinez respectfully requests that the Court grant summary judgment in his favor and against Montoya on his *Franks* claim as Montoya cannot carry his burden to identify that any constitutional violation was clearly established.

### B.     Montoya's Conspiracy Claim Should Be Dismissed.

Montoya's final surviving claim against Martinez is a civil conspiracy claim brought pursuant to 42 U.S.C. § 1983 predicated substantively on his *Franks* claim's alleged violations. As with the substantive *Franks* claim, Martinez asserts qualified immunity as a defense to this claim. Martinez respectfully argues that Montoya's inability to assert a substantive *Franks* claim against him bars any claim for conspiracy under § 1983. *See Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990) (holding that the Tenth Circuit "join[s] those circuits which have

recognized that to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights[.]") As a derivative claim, Montoya's claim for conspiracy cannot survive without an underlying *Franks* violation.

To the extent that the Court disagrees, however, the record before the Court demonstrates that Martinez did not conspire with any other party as Montoya alleges. Accordingly, Martinez asserts that no violation of clearly established law occurred. Even if one had, defendants respectfully assert that no such violation was clearly established so as to abrogate Martinez's qualified immunity with respect to this claim. Martinez addresses each prong of qualified immunity in turn.

1.    The Evidence in the Record Demonstrates that Martinez Did Not Conspire With Any Other Defendants.

To survive summary judgment against qualified immunity, Montoya must show at least a combination of two or more persons acting in concert, a meeting of the minds, and either an agreement or a general conspiratorial objective between the defendants. *See Fraiser v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021). Montoya must establish "a single plan, the essential nature and general scope of which was know[n]to each person who is to be held responsible for its consequences." *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).

The record before the Court evinces no such conspiracy as to Martinez. *See* MSMF, ¶ 14-21. While certainly no direct evidence of any conspiracy exists, no circumstantial evidence of any such agreement as to Martinez exists either. No defendant testified of any conversations with Martinez before or after the interview that would evince such intent. Likewise, there are no documents in the record suggesting that Martinez participated any alleged plan. Finally, there is

no testimony of any documents that Martinez would have drafted – or any testimony of any input from Martinez relating to the drafting of the Affidavit. Given this dearth of direct or circumstantial evidence present in the record, Montoya cannot carry his burden against Martinez's qualified immunity at this stage.

        2.    <u>No Clearly Established Law.</u>

Even if the Court were inclined to find some circumstantial evidence precluding summary judgment on the first prong of qualified immunity, Montoya cannot demonstrate that any violation was clearly established against Martinez.

In determining whether a right is clearly established, Montoya must identify Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) recognizing an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Montoya's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated an individual's civil rights. *White v. Pauley*, 580 U.S. 73, 80 (2017). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (emphasis in original). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotations and citation omitted).

Thus, in cases where the plaintiff has alleged that an officer acted with reckless disregard for the truth in the warrant application, the plaintiff must "identify a case where an officer acting under similar circumstances [to Martinez] was held to have violated the Fourth Amendment." *Harte v. Johnson County*, 864 F.3d, 1154, 1202 (citing *White*, 580 U.S. at 80).

Here, Montoya will be unable to point to the requisite binding authority placing Martinez on notice that his conduct was unconstitutional. As Martinez has argued above, there is no evidence of any such conspiracy – and given Martinez's limited involvement in the facts central to a *Franks* claim, it is all the more unlikely that Montoya will be able to demonstrate that a former detective who only attended part of the interview of Montoya (and who elicited no inculpatory statements) and who did not draft or aid in drafting the arrest affidavit violated Montoya's clearly established rights. Accordingly, Martinez respectfully requests that the Court enter summary judgment in his favor, and against Montoya on his *Franks* conspiracy claim.

### C. Incorporation Of All of Defendant The City and County of Denver and Other Individual Defendant's Arguments.

Martinez, pursuant to Fed.R.Civ.P. 10(c), hereby incorporates by reference all of the arguments and authorities raised in Defendant the City and County of Denver's Motion for Summary Judgment, in addition to Defendant Vigil, Defendant Schneider, and Defendant Priest's similar Motions for Summary Judgment.

**WHEREFORE**, Defendant Michael Martinez respectfully requests that this court grant his Motion for Summary Judgment and to dismiss both of Montoya's claims that are outstanding against him, and for all other and further relief as this Court deems just and appropriate.

Respectfully submitted,


s/ Eric M. Ziporin
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Ste. 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
E-mail: eziporin@sgrllc.com


s/ James T. Kadolph
**James T. Kadolph**
SGR, LLC
3900 E. Mexico Ave., Ste. 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
E-mail: jkadolph@sgrllc.com


*Attorneys for Defendant Michael Martinez*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of July, 2023, I electronically filed a true and exact copy of the above and foregoing **DEFENDANT MARTINEZ'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andrew D. Ringel
Hall & Evans, LLC-Denver
Email: ringela@hallevans.com
*Counsel for Defendant Martin E. Vigil, Individually*

Jonathan K. Cooper
Denver City and County Attorney's Office
Email: jonathan.cooper@denvergov.org
*Counsel for Defendant City and County of Denver*

Peter H. Doherty
Lasater & Martin, P.C.
Email: Peter@LasaterandMartin.com
*Counsel for Defendant Jonathan Priest, Individually*

Josh A. Marks
Berg Hill Greenleaf Ruscitti LLP
Email: jam@bhgrlaw.com
*Counsel for Defendant R.D. Schneider, Jr.,*
*Individually and Officially*

s/ Carol J. Kelly
Legal Secretary

23